THE STATE OF KANSAS, *ex rel. Fred S. Jackson, as Attorney-general,* v. C. S. NATION.

No. 15,772.   ( 96 Pac. 659.)

SYLLABUS BY THE COURT.

·CONSTITUTIONAL LAW — *Establishment of Courts* — *General or Special Law.* The right to exercise the duties of judge of the city court of Chanute depending upon the validity of chapter 179 of the Laws of 1907, a special act which purports to create that court, it is *held:* (1) That a general law can be made applicable giving to cities with like conditions, where the necessity may exist, reasonable facilities for the transaction of local judicial business of the nature attempted to be vested in the city court of Chanute by the act in question; (2) that the power of the legislature to establish courts inferior to the supreme court, under articles 2 and 3 of the constitution, can not be exercised by a special law in cases where a general law can be made applicable; (3) that the act in question violates section 17 of article 2 of the constitution, and affords no warrant for the defendant to hold the office of judge of the city court.

Original proceeding in *quo warranto.* Opinion filed .June 6, 1908. Judgment of ouster.

*Fred S. Jackson,* attorney-general, and *John S. Daw-.son,* assistant attorney-general, for The State; *Lapham .& Brewster,* and *L. W. Keplinger,* of counsel.

*H. P. Farrelly, T. R. Evans, James W. Reid, John J. .Jones, S. C. Brown,* and *B. H. Grigsby,* for defendant.

·The opinion of the court was delivered by

BENSON, J.: This is an action in *quo warranto* to ·oust the defendant from exercising the duties of judge ·of the city court of Chanute, on the ground that the

The State v. Nation.

act creating that court is in violation of the constitution. The act in question is chapter 179 of the Laws of 1907, entitled as follows:

"An act creating a court in the city of Chanute, Neosho county, Kansas, defining the jurisdiction thereof, providing officers therefor and defining their powers and duties, and limiting the jurisdiction of the justices of the peace of said city."

The act purports to establish a court of record in the city of Chanute, with civil and criminal jurisdiction throughout the county of Neosho, and limited, in actions for the recovery of money and specific personal property, to the amount and value of $1000, and extending to other matters enumerated therein, with exclusive jurisdiction of offenses against the ordinances of the city. It also provides for the appointment of a judge, clerk, and marshal, prescribes the procedure and the details for the organization and maintenance of the court, and requires the city to furnish a court-room, pay the salary of the judge, and defray incidental expenses. The following facts are agreed upon:

"(1) That the city of Chanute is a municipal corporation, a city of the second class, situated in Neosho county, has a population of 8746, which does not include several additions adjacent to the city containing several hundred people; that at the time of the passage of the law referred to in the pleadings the said city had two justices of the peace, and still has, and one police judge, and still has, as provided by law.

"(2) That said Neosho county is a part of the seventh judicial district of the state of Kansas, which is composed of Neosho and Wilson counties; that there are three terms of the district court held in each county annually, as provided by law—at Fredonia, in Wilson county, and at Erie, in Neosho county, sixteen miles distant by railroad from Chanute; that the population of Neosho county is 23,414, and that of Wilson county 19,261, making a total population of said judicial district of 42,675.

"(3) That the special act of the legislature creating the city court of Chanute, to wit, chapter 179, Session Laws of 1907, was duly and regularly passed, approved

and published; that the defendant has been a resident of the city of Chanute for and during the past five years, and is otherwise qualified, as provided in said act, was duly and regularly appointed judge of said court, and duly qualified as such judge, as provided by said act, and has been exercising the rights and discharging the duties of judge of said court since about March 1, 1907."

The plaintiff claims that the act in question is in conflict with several constitutional provisions; among others, the following:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state." (Const., art. 2, § 17.)

The act being special, we must determine whether a general law can be made applicable. The determination of this question, since the adoption of the amendment of 1906, which consisted in the addition of the last clause to the section above quoted, rests upon the court. Several similar special statutes were enacted, before the amendment was adopted, by which city courts in Kansas City, Topeka, Wichita, Leavenworth, Atchison, Fort Scott and Coffeyville were created, and also a county court for Douglas county. The validity of the act establishing city courts in Kansas City was upheld in *In re Greer*, 58 Kan. 268, 48 Pac. 950. The act relating to the court of Topeka was held valid in *Chesney v. McClintock*, 61 Kan. 94, 58 Pac. 993. These special laws were upheld on the ground that the legislature alone had the power to determine whether a general law could be made applicable. This is the power now given to the courts by the amendment (*Anderson v. Cloud County*, 77 Kan. 721, 95 Pac. 583), and in its exercise the court must determine whether the legislature can by general laws provide for courts that will afford reasonable and proper facilities for the trans-

action of business of the nature cognizable in this and similar tribunals.

It is urged that the situation is peculiar; that, Chanute being so far from the county-seat, litigation in the district court is unduly expensive and burdensome to its citizens; that the greater part of the business of that court is from the city, which is a prosperous mining and manufacturing town, containing two-fifths of the population of the county. An examination of the nine special laws enacted in the last six sessions of the legislature creating city courts shows a unity of purpose and general similarity, but reveals differences in jurisdiction, in provisions for maintenance, and in procedure. The salaries of two of the judges are paid by the city, and seven by the counties in which the cities are located. These salaries vary from $750 and fees to $2000 per year. The jurisdiction of these courts in ordinary actions for money and the recovery of specific personal property varies from $300 to $1000 in the amount demanded and value of the property claimed. One has jurisdiction in actions for damages to the person or to personal property to the amount of $600. Exclusive jurisdiction is given in two of these courts of all offenses against the city ordinances. In some of them writs and processes are required to be the same as those issued by justices of the peace; in others, the same as those issued by the clerk of the district court. Provisions for a change of venue to the district court are found in one of these statutes, and to a justice of the peace in several of them. In the act under consideration, relating to Chanute, and in the act establishing the city court of Coffeyville, seals are required, and provisions are made that the procedure of the district court not in conflict with the act shall apply. In other acts it is provided that the practice in justices' courts shall prevail, except as expressly modified. These differences, and others not now referred to, indicate that such legislation mars the har-

mony of our judicial system, and tends to incongruities and evils in addition to those stated by Mr. Justice Porter in the Cloud county case.

A consideration of these special enactments may be useful for another reason: the frequent recourse to such legislation in the past indicates a probability that other cities in similar situations and with like conditions will apply for the same relief in the future, and a general demand for these facilities would afford some support to the claim that they might be provided by general law.

The conditions peculiar to Chanute, set out in the agreed statement, are insisted upon to prove that a general law can not be made applicable. That it differs in these and in other respects from the cities where like courts have been established and other cities where similar tribunals may hereafter be required must be conceded, for no community is precisely like another, yet such differences in local conditions have not been considered an obstacle to the just operation of general laws in other governmental matters. For the various concerns of local government and administration cities in this state are classified, and when such classification is reasonable laws relating to a particular class are upheld. (*Parker-Washington Co. v. Kansas City,* 73 Kan. 722, 85 Pac. 781.) There are at this time three cities in the state with a larger population than Chanute (and others containing a population of over 6000) which are not county-seats. All of these are flourishing towns, with extensive mining, manufacturing and commercial interests, and the list will increase with the natural growth and development of the state. It is difficult to perceive why the reasons based upon the peculiarity of local conditions, if sufficient to uphold special legislation creating city courts, would not sustain special legislation upon other important affairs of local administration and government, among which are the establishment and maintenance of

schools; but this court has decided that a special act. establishing a high school for a particular county is invalid, as the end sought may be reached by a general law. (*Deng v. Scott County,* 77 Kan. 863, 95 Pac. 592.) It will be noticed by referring to other acts creating city courts that the legislature has not deemed the fact. that the city is not a county-seat a controlling consideration, for seven of these courts are located at county-seats, and, presuming that such laws were enacted in response to the request of the locality affected, it is seen that the demands were not based upon that ground; but in this instance the fact that Chanute is. not a county-seat, and therefore does not have the benefit of sessions of the district court, is urged as one of the principal reasons why a general law could not be made applicable. We conclude upon this branch of the case that a general law can be made applicable, giving to cities with like conditions, where the necessity may exist, reasonable facilities for the transaction of local judicial business of the nature attempted to be vested in the city court of Chanute by the act in question.

The defendant, however, argues with much force that section 1 of article 3 of the constitution governs in the creation of courts, and that the constitutional provision hereinbefore discussed has no application to the act in question. If this contention is sustained, the act is valid. Article 3 relates to the judicial department, and the section relied upon reads:

"The judicial power of this state shall be vested in a supreme court, district courts, probate courts, justices of the peace, and such other courts, inferior to the supreme court, as may be provided by law; and all courts of record shall have a seal to be used in the authentication of all process." (§ 1.)

The argument in brief is that as the act creates a. court inferior to the supreme court the above legislative warrant is complete in itself, and not limited by any other provision. If it is not so limited the conclusion.

is irresistible. This provision, however, is only declaratory of the power of the legislature to create such courts. In article 2 there is not only a general grant of legislative power, but regulations for, and restrictions upon, its exercise. It is a familiar rule that the different parts of the same instrument are to be construed together to arrive at the true sense. Wherever it is possible to do so each provision must be construed so that it will harmonize with all others. (8 Cyc. 730; 6 A. & E. Encycl. of L. 925; Cooley's Const. Lim., 6th ed., 72, 73.) So reading the constitution, no difficulty is perceived. The legislature may create courts inferior to the supreme court (Const., art. 3, § 1), by general law where it can be made applicable. (Const., art. 2, § 17.) Otherwise we would be compelled to read an exception into the last-named section after this manner: "In all cases where a general law can be made applicable no special law shall be enacted, *except to create courts inferior to the supreme court.*" As we read these provisions together, no such violence is done to section 1 of article 3. That section establishes certain courts, and authorizes the legislature to create others by law, *i. e.,* by law constitutionally enacted. Thus construed, full effect is given to each provision in harmony with the context and with the natural meaning of the whole instrument. We can find no sufficient warrant for the assumption that the people in adopting the constitution intended to except acts creating local courts from the restriction against special legislation. Such an assumption would to a large extent paralyze the restriction to which the people sought to give efficacy by the recent amendment.

In the Cloud county case (77 Kan. 721, 733) it was suggested that the boundaries of judicial districts could only be changed by special law, and this is referred to as supporting the defendant's position here. The difference, however, is obvious. District courts were created, and districts established, by the constitution

itself, and authority given in express terms for changing them.  In the nature of things such a law is special, and a general law to effectuate the purpose would be practically, if not absolutely, impossible.

In arriving at these conclusions we have given full consideration to the agreed statement of facts, in connection with the nature of the subject and those matters of judicial notice proper in the determination of judicial questions, as stated in *Anderson v. Cloud County, supra.*  Finding that chapter 179 of the Laws of 1907 is in violation of the state constitution, it affords no warrant for the powers exercised by the defendant, and judgment of ouster will be entered, as prayed for by the plaintiff.