THE STATE OF KANSAS, *ex rel. Fred S. Jackson, as Attorney-general,* v. FRANK D. HUTCHINGS.

No. 16,163.   (98 Pac. 797.)

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*Special Act Creating a Circuit Court.* Chapter 52 of the Laws of 1908 is a special law, in violation of section 17 of article 2 of the constitution of Kansas, and affords no warrant to the defendant for holding the office of judge of the circuit court of Wyandotte county.  .

2. ——— *Establishment of District Courts—General Law Applicable.* A general law can be made applicable to the whole state and adequate to furnish reasonable facilities for discharging the judicial business which now comes or may come within the cognizance of the district court in any county.

3. ——— *District Judges—Creation of Office.* The constitution of Kansas does not prohibit the legislature from providing more than one district judge in a judicial district.   .

Original proceeding in *quo warranto.* Opinion filed December 12, 1908.   Judgment of ouster.

STATEMENT.

THIS is an original proceeding in *quo warranto,* by the state of Kansas on the relation of the attorney-general, to . oust the defendant from exercising the duties of judge of the circuit court of Wyandotte county.   The case is submitted on a motion by the plaintiff for judgment on the pleadings, consisting of the following information and answer:

"INFORMATION.

"Comes now the state of Kansas, by Fred S. Jackson, the duly elected, qualified and acting attorney-general of the plaintiff state, and prosecuting in its behalf, and gives the court to understand and be informed that Frank D. Hutchings, a citizen of the state of Kansas and a resident of Wyandotte county therein, unlawfully holds and exercises the functions of a civil public officer and magistrate in said state, namely, judge of the circuit court of Wyandotte county, Kansas.   And the said defendant, as such judge, assumes to exercise, and

does exercise, all the honors, powers, privileges and prerogatives of a judge of the state of Kansas in a court of general jurisdiction, and said defendant is now [exercising], and at all times since about the 5th day of February, 1908, has exercised, the functions of a magistrate of a court of general jurisdiction within the state of Kansas in the county of Wyandotte.

"And the plaintiff herein further informs the court that the only foundation for the authority of the said defendant to exercise the functions, powers, liberties, privileges and prerogatives of a magistrate of the state of Kansas in Wyandotte county is founded upon a certain pretended act of the Kansas legislature, which appears in chapter 52 of the Session Laws of Kansas of 1908, and is entitled:

" 'An act to create the circuit court of Wyandotte county, to define the powers and jurisdiction of such court and of the judge thereof, to provide for the holding of the terms of such ·court, and for the transfer from the district court and the court of common pleas of Wyandotte county of certain actions to said circuit court and from the circuit court to the district court and the court of common pleas, and for the appointment and election of a judge and clerk therefor.'

"And the plaintiff alleges that the said act, to wit, chapter 52 of the Session Laws of 1908, is a plain and flagrant violation of section 17 of article 2 of the constitution of the state of Kansas, as amended by the electors in said state at the general election in 1906.

"Wherefore, plaintiff prays that the defendant, Frank D. Hutchings, may be required to answer *quo warranto* he exercises the powers, functions, liberties and privileges of a judicial magistrate and civil officer of the state of Kansas in Wyandotte county, and that upon final hearing a judgment of ouster be issued against the said Frank D. Hutchings, and that he be ousted, prohibited, restrained and enjoined from acting as a circuit judge or other judicial magistrate in Wyandotte county, in the state of Kansas, through any claim of right or pretense of right flowing from chapter 52 of the Session Laws of 1908, and that the plaintiff have its costs in this behalf expended.

"ANSWER.

"Now comes the defendant above named and for answer to plaintiff's petition denies that chapter 52,

Laws of 1908, is unconstitutional and void; and alleges that said chapter 52, Laws of 1908, was regularly and duly enacted by the legislature of the state of Kansas, signed by the governor, and duly published in the official state paper in manner and form provided by law, and is now a valid and subsisting law; the defendant was regularly appointed and commissioned by the governor of Kansas judge of the circuit court created by said act, and duly and regularly qualified as such judge, and, since February 7, 1908, has been, and now is, acting as such judge and performing the duties of said office.

·"The defendant further says that the county of Wyandotte, at the last census taken, had a population of 111,316, and the population of said county is increasing at the rate of about 10,000 per annum. Of the population of said county, the last census showed that 95,969 resided in four cities located within said county, distributed as follow: Kansas City, 80,859; Argentine, 6363; Rosedale, 5407; Bonner Springs, 3360; leaving 15,547 people in said county residing in small villages, additions, and on farms outside of the four cities above mentioned. The city of Kansas City has increased in population rapidly since the last census was taken, and the population of said city at the present time is estimated to be nearly 90,000; and said city is now the second meat-packing center in the world, having eight modern packing-houses, of which Armour's, Swift's, and that of Nelson Morris are very large concerns.

"Defendant further says that the assessed valuation of the county of Wyandotte for the year 1908 is $99,-591,546.58. Several hundred industrial establishments and factories are located in the said county of Wyandotte, including several large flouring-mills, soap factories and foundries. The said county is penetrated by seven commercial lines of railroad, some of them running for a considerable distance through said county. Besides said commercial railroads there is a trolley-line between Kansas City and Leavenworth extending through the entire county, and another extending from Rosedale into Johnson county, Kansas. There are, in said county, nineteen grain elevators, with a total storage capacity of 5,755,000 bushels; a belt, or circular, railway also intersects Kansas City; and there

13—79 KAN.

are many switch-tracks in said city, and several machine-shops connected with the railways therein. Besides the foregoing enumerated establishments, Wyandotte county has over a dozen banks, extensive stock-yards, and, by reason of its size, situation and proximity to Kansas City, Mo., carries on a very large commercial and industrial business. The cities of Kansas City, Argentine and Rosedale are intersected by a complete and connected street-railway system, embracing many miles in extent. Defendant says that the conditions above enumerated, respecting Wyandotte county, existed at the time the said circuit court was created by said chapter 52 of the Laws of 1908.

"Defendant further says that when said act was passed there were pending and undetermined in the two superior courts of general jurisdiction of Wyandotte county 1248 cases, of which 311 were criminal and 937 were civil cases; that said court was created and needed to relieve the crowded condition of the dockets of the other two courts; that Wyandotte county was the only county in the state of Kansas, at the time said circuit court was created, having two courts of general jurisdiction and that needed a third court for the transaction of business originating in said county. When said court commenced business 300 cases were transferred to it from the other two courts, and 160 new civil and criminal cases were commenced in said court prior to August 4, 1908. There are now pending in said district court of Wyandotte county over 539 cases, and in the common pleas court of said county over 500 cases. The average number of cases brought monthly in the district and common pleas courts is 78. That said circuit court has disposed of 130 or more cases in which judgments have been rendered varying in amount, and in one of which a judgment in amount of $5000 was obtained and is still in force.

"Defendant says that by reason of the above-mentioned and described condition of affairs in Wyandotte county no law could have been made applicable except the said law drawn in question in this action; and said defendant denies that said law is a special law within the meaning of section 17 of article 2 of the constitution of the state of Kansas, as amended by the electors in said state at the general election of 1906; but should the court decree that said act in question is a special

law, within the meaning of said section 17 of article 2 of the constitution, the defendant still avers that by reason of the peculiar condition of affairs and the situation in Wyandotte county, as hereinbefore set forth, said law ought to be held valid and constitutional.

"Wherefore, the defendant prays that he may go hence without day, and recover his costs."

The motion for judgment on the pleadings is as follows:

"Comes now the state of Kansas, plaintiff herein, by Fred S. Jackson, its attorney-general, and moves the court for judgment as prayed for in its petition herein filed, notwithstanding the answer of said defendant, for the reason that said answer does not state facts sufficient to constitute a defense or raise any issue to be tried in said action."

*Fred S. Jackson,* attorney-general, and *John S. Dawson,* assistant attorney-general, for The State; *H. L. Alden, John T. Sims,* and *A. L. Berger,* of counsel.

*Nathan Cree,* and *J. T. Whitelaw,* for defendant.

The opinion of the court was delivered by

SMITH, J.: The only question presented is whether chapter 52 of the Laws of 1908 is in violation of the inhibition against special legislation contained in section 17 of article 2 of the constitution of Kansas as amended in 1906. The section as amended reads, the amendment being italicized:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable no special law shall be enacted; *and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state.*" (See Laws 1905, ch. 543, § 1.)

It is contended by the plaintiff that chapter 52 of the Laws of 1908 is a special law within the meaning of the amendment. Also, that the title and first section of the act characterize it as such. They read:

"An act to create the circuit court of Wyandotte county, to define the powers and jurisdiction of such court and of the judge thereof, to provide for the holding of the terms of such court, and for the transfer from the district court and court of common pleas of Wyandotte county of certain actions to said circuit court and from the circuit court to the district court and the court of common pleas, and for the appointment and election of a judge and clerk therefor.

*Be it enacted by the Legislature of the State of Kansas:*

"SECTION 1. That a new court of record be and such court is hereby created and established for the county of Wyandotte, to be called the circuit court of Wyandotte county. Said court shall have one presiding judge, whose style of office shall be 'judge of the circuit court'; and said court shall have a clerk, whose style of office shall be 'clerk of the circuit court.' "

The defendant, on the other hand, contends that the act is not a special law, but is a general law, or, if it is a special law, that the facts alleged in the answer, being admitted by the motion for judgment on the pleadings, are sufficient to prove that a general law could not be made applicable and meet the public requirement and necessity for additional court facilities in Wyandotte county; that because the court is, by the terms of the act, located in Wyandotte county it does not follow that the provision is for the benefit of that county alone, but that it is for the benefit of every citizen of the state, and even of non-residents of the state who may have business in the courts of that county—in short, that it is as much for the common benefit of citizens of the state as is the district court of any one of the other counties of the state. It is also contended that, as section 14 of article 3 of the constitution requires that judicial districts shall be bounded by county lines, the territory could not be decreased, as the county of Wyandotte, now and at the time of the passage of the act, alone constituted a judicial district; that the district court, although relieved in part by the court of common pleas, was unable to dispose of the

mass of business that came to it; that the legislature was fairly if not expressly authorized by section 1 of article 3 of the constitution to create such other courts, inferior to the supreme court, as should be necessary to transact the business. A portion of section 1 of article 3 reads:

"The judicial power of this state shall be vested in a supreme court, district courts, probate courts, justices of the peace, and such other courts, inferior to the supreme court, as may be provided by law."

In reply to the question whether or not the act is a special law the plaintiff refers to *The State v. Nation,* 78 Kan. 394, 96 Pac. 659, in which this court held that an act creating a court in the city of Chanute, Neosho county, defining the jurisdiction thereof, and providing officers therefor, etc., was within the inhibition of section 17 of article 2 of the constitution as amended. That case in turn cites *Anderson v. Cloud Co.,* 77 Kan. 721, 95 Pac. 583. Those cases are instructive, but neither is to any considerable extent parallel to this.

The plaintiff also cites, as evidence that other cities and counties of the state need or have needed remedial legislation of the character attempted in the bill in question, chapter 35 of the Compiled Laws of 1862, creating a criminal court for Leavenworth county; chapter 117 of the Laws of 1889, creating the court of common pleas of Sedgwick county; chapter 140 of the Laws of 1885, creating the superior court of Shawnee county; chapter 92 of the Laws of 1891, creating the court of common pleas of Wyandotte county; and chapter 16 of the Laws of 1898, creating the court of common pleas of Crawford and Cherokee counties. A perusal of these acts and the differing provisions therein in regard to jurisdiction, procedure and the power of enforcing judgments of the various courts established thereby, and other differences referred to by Mr. Justice Benson in *The State v. Nation, supra,* fully justify the remark in the latter case that "these differ-

ences, and others not now referred to, indicate that such
legislation mars the harmony of our judicial system,
and tends to incongruities and evils in addition to those
stated by Mr. Justice Porter in the Cloud county case."
(Page 397.)    Uniformity in the procedure and jurisdic-
tion of all *nisi prius* courts of general jurisdiction in
the state is of but little, if any, less importance than the
uniformity of the law as to the rights of property and
of persons.   We think it must be conceded that the act
in question is special legislation.

The real question, and we may say the difficult ques-
tion, is, Can a general law be made applicable to the
varying conditions and necessities of the different
counties and cities of the state which will supply to
every portion of the state reasonably adequate and ex-
peditious facilities for the judicial determination of all
civil and criminal actions which arise or may arise
therein?   This all citizens of the state have a right to
expect in every section thereof.   Also, it has been the
general policy of the state to pay from the state treas-
ury the salaries of district judges and justices of the
supreme court, and it seems unfair to impose upon com-
munities which require additional judicial facilities of
the character which in other communities devolve upon
district judges the burden of paying the salaries of
judges of courts designed for that purpose.   This has
been done by some of the special acts referred to.   It is
desirable, also, that citizens in every part of the state
should be assured that they may go to the records of one
court in any county of the state and ascertain what judg-
ments or liens, if any, affect the title to any real estate
in that county in which they may be interested.   Many
other reasons might be assigned making it desirable
and important to have only one court of general juris-
diction in each county of the state.

Before holding the act for the relief of Wyandotte
county unconstitutional it devolves upon this court at
least to suggest the general features of a law which

The State v. Hutchings.

can be made applicable to the whole state. We adopt the suggestion made in the defendant's brief, which is, in substance, that in cases where a judicial district consists of one county only, and one judge is unable to discharge the business devolving upon the court, one or more additional district judges, as the necessities and convenience of the public may require, be provided for such district. By the provision of section 14 of article 3 of the constitution judicial districts must be bounded by county lines, and hence a county can not be divided into two or more judicial districts. However, there is no inhibition in the constitution against there being more than one district judge in a judicial district. It is suggestive that in framing the constitution it was provided, in section 1 of article 3, that the judicial power of the state should be vested in a supreme court, district courts, probate courts, justices of the peace, and such other courts, inferior to the supreme court, as may be provided by law. It was provided by section 2 that the supreme court shall consist of one chief justice and two associate justices (since amended to provide for seven justices). Section 8 provides that the probate court shall consist of one judge, but there is no specification of the number of judges of which a district court shall be composed. True it is that section 5 divided the state into five judicial districts, and provided that in each of the districts a district judge should be elected, and section 20 of the same article provided for the election of a judge *pro tem.* "when the judge is absent or otherwise unable or disqualified to sit in any case."

It may be argued that the words "a" and "the" as used in these sections refer to one person, and by implication limit the number of judges in one judicial district to one person. It may not have been in the minds of the framers of the constitution that more than one district judge might become necessary in one judicial district, and hence the use of the articles "a"

and "the," but since no specific limitation was made on the number of judges, as was done with reference .to the supreme court and the probate court, it is reasonable to infer that no such limitation was intended. The evident great benefit to the state which would result from harmonizing our judicial system and judicial procedure impels us, in the absence of such express inhibition, to suggest that a law providing for more than one judge in a judicial district would not be in violation of the constitution.

It follows that the legislature can enact a general law applicable to the whole state providing that when a judicial district has or attains a certain population, or has placed upon the docket of its district court a certain number of cases annually, or when both of these conditions concur or other conditions make it reasonably necessary, the facts being ascertained in a manner provided by the law, the governor may appoint, or the electors of the district may elect, a second district judge of the district, and upon certain other specified conditions that a third or fourth district judge of the district may be appointed or elected. Provision may also be made in case there be more than one district judge in a district for the judges to hold court in divisions. The plan suggested may not be the only one feasible.

We conclude that chapter 52 of the Laws of 1908 is in derogation of section 17 of article 2 of the constitution, which inhibits the enactment of a special law where a general law can be made applicable. The judgment of the court is that the defendant, Frank D. Hutchings, illegally assumes to exercise, and does exercise, the powers, privileges and prerogatives of a judge of the state of Kansas in a court of general jurisdiction, that he be ousted from such office, and that he pay the costs of this action.

PORTER, J. (concurring specially) : The law is mani-

festly repugnant to section 17 of article 2 of the constitution as amended, and no valid argument to support it based upon convenience or necessity is of any force for the reason that a general law can be made to apply. Besides, a general law providing for an increase in the number of judges of the district court in counties of a certain class, to be determined by the legislature, would have the effect to preserve instead of mar the symmetry and uniformity of our judicial system. The creation of a variety of courts designated by different names and necessarily differing from the district court in matters of jurisdiction, and differing in themselves in forms of procedure and practice, should not be encouraged. The difference in courts requires a separate clerk for each, and separate records and dockets, entailing upon the public unnecessary inconvenience and expense. Moreover, the conditions existing in Wyandotte county differ from those in several other counties only in degree. This court takes cognizance of the conditions existing in a number of counties where the volume of court business has increased in recent years to such an extent as to render it difficult if not impossible for one district judge to give to it the attention its importance deserves or dispose of it with the promptness which justice to the public and the rights of parties and litigants demand. This is especially true of Shawnee, Sedgwick, Crawford and Montgomery counties.

At the last session of the legislature, when the act in question was pending, a resolution was introduced in the house requesting the supreme court to determine the question whether the constitution permits an increase in the number of judges of the district court. Doubtless, owing to the fact that there is no provision by which legal questions can be submitted to this court in that manner, the resolution was not passed; but the circumstance is an indication that the legislature, recognizing the conditions, has only been prevented

from enacting a general law on the subject by the uncertainty which has prevailed in respect to this constitutional question. The constitution nowhere limits in express terms the number of judges of the district court, nor does it in express terms provide for more than one district judge; but the construction we have given the provision establishing district courts, in my opinion, does no violence to the spirit or intent of the organic law, and at the same time is approved by the argument of convenience and necessity and accords with sound reason.