No. 35,711

EDWARD H. POWERS, GEORGE W. REIGEL, NORMAN B. SORTOR and DON ADAMS, *Plaintiffs,* v. HOWARD H. THORN, County Clerk of Wyandotte County, et al., *Defendants;* THOMAS C. LYSAUGHT, FRANK R. CALLAHAN, RALPH E. BURT and C. CLYDE MYERS, *Intervenors.*

(129 P. 2d 254)

Opinion filed October 3, 1942.

*T. F. Railsback,* of Kansas City, argued the cause, and *C. W. Trickett, J. H. Brady, A. J. Stanley* and *David F. Carson,* all of Kansas City, were on the briefs for the plaintiffs.

*Joseph H. McDowell,* county attorney, and *Thomas E. Joyce,* assistant county attorney, argued the cause, and *Thomas M. Van Cleave, Jr., John J. Bukaty, O. Q. Chaflin, III,* and *Ulysses G. Plummer,* assistant county attorneys, were on the briefs for the defendants.

*Fred Robertson, William Drennan, Thomas Van Cleave* and *Patrick W. Croker,* all of Kansas City, were on the briefs for the intervenors. *C. Clyde Myers* was on the briefs *pro se.*

The opinion of the court was delivered by

DAWSON, C. J.: On June 30, 1942, the plaintiffs filed separate applications for alternative writs of mandamus to require the county clerk of Wyandotte county to file their declarations of intention to become candidates for nominations to the elective offices of the city court of Kansas City at the oncoming primaries to be held on August 4, 1942, and to require him to accept their tenders of the statutory filing fees therefor.

Governor Ratner and the other members of the state board of canvassers were impleaded for whatever possible concern they might have in the proceedings. C. Clyde Myers was permitted to interplead as an avowed candidate for nomination for one of the elective city court offices if plaintiffs' applications for mandamus were granted.

Plaintiffs' separate applications for alternative writs were of the same general tenor. Paraphrasing that of Powers as typical, it was alleged that he was a resident citizen of Kansas City, in Wyandotte county, and affiliated with the Republican party, and that he had tendered to the defendant county clerk his declaration of intention to become a candidate for nomination to the office of judge of the city court of Kansas City township, division No. 2, in Wyandotte county, at the primary election to be held on August 4, 1942, and therewith he also tendered the requisite statutory filing fee.

The county clerk is the public official charged with the duty of accepting all proper declarations of candidacies for nominations for county and township offices, and likewise the duty of preparing the primary election ballots with the names of all such candidates printed thereon. But in the matter of Powers' candidacy and the others of present concern, the county clerk declined to accept the declarations of candidacy and declined to accept the tendered filing fees on the ground that no such city court offices were to be filled at

the election this year, 1942. The county clerk's written statement declining the tenders of candidacy and filing fees read, thus:

"The above and foregoing declaration of intent to become a candidate for judge of the city court of Kansas City township, division No. II, Wyandotte county, Kansas, together with the proper filing fee for said office, was offered to me on June 20, 1942, at 11:43 o'clock a. m., and it being my opinion that no vacancy exists in said office to be filled by election at this time I therefore refused to accept said declaration of intent to become a candidate of judge of the city court of Kansas City township, division No. II, Wyandotte county, Kansas, and refused to accept said filing fee.

Signed: HOWARD THORN, *County Clerk.*"

The statute on which the county clerk based his official action is chapter 170 of the Session Laws of 1929 (G. S. 1935, 20-2105), and provides that the judges of the city court of Kansas City shall hold their offices for a term of four years. Petitioners alleged that this statute is unconstitutional on the ground that the city court of Kansas City is essentially and fundamentally a township court, that Kansas City is itself a township of Wyandotte county, and that the statutory provision fixing the terms of the elective officials of the city court offices of Kansas City at four years violates the constitutional provision which declares:

"General elections and township elections shall be held biennially on the Tuesday succeeding the first Monday in November in the years bearing even numbers. All county and township officers shall hold their offices for a term of two years and until their successors are qualified. . . ." (Const., art. 4, sec. 2.)

Another constitutional paragraph which bears somewhat on the legal question involved in these proceedings reads:

"Two justices of the peace shall be elected in each township, whose term of office shall be two years, and whose powers and duties shall be prescribed by law. The number of justices of the peace may be increased in any township by law." (Const., art. 3, sec. 9.)

The application for the writ includes a cursory rehearsal of the various statutes which have been enacted during the last forty-five years which were designed to give Kansas City an improved system of administering justice in petty courts of first instance over that supplied by the township courts, that is, by justices of the peace. Petitioners allege that the lapse of time and the divers and sundry statutes enacted from time to time since their inception in 1897 (Laws 1897, ch. 107) have not altered the fundamental character of the city court of Kansas City; that it remains to this day a township court, that its officers are township officers and not city officers,

that elections thereto are biennial and not quadrennial, and that if the ancestry of the present city court of Kansas City is not traceable to the original statute of 1897 and related legislation as a township court, and is to be regarded as a city court having no relation to its township prototype, then it is founded on special legislation in violation of the constitutional provision which declares:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state." (Const., art. 2, sec. 17.)

In the county clerk's answer to the alternative writ, he directed attention to the provisions of the most recent statute (Laws 1929, ch. 170) which declare that the judges, clerks and marshals of the city court of Kansas City shall be elected for terms of four years beginning with the general election of 1932. He also cites article III, section 1 of the constitution, which vests the judicial power of this state in a supreme court, district courts, probate courts, "and such other courts, inferior to the supreme court, as may be provided by law."

Defendant's answer further alleged that the present incumbents of the various elective offices of the city court, judges, clerk and marshal, were regularly elected to their respective offices at the general election of 1940, and have been duly inducted into their respective offices and that their terms of office will not expire until after the general election of 1944, at which time their successors will be elected; and consequently there are no vacancies in said offices to be filled at the general election in 1942. Defendant concluded his answer with a motion to dismiss. On their joint application, Lysaught, city judge of the second division of the city court; Callahan, marshal; and Burt, clerk, were permitted to intervene. They filed an answer of the same general tenor as that of the county clerk, and moved to dismiss the proceedings — partly in reliance on two decisions of this court, *Chesney v. McClintock,* 61 Kan. 94, 58 Pac. 993, and *Griffith v. Manning,* 67 Kan. 559, 73 Pac. 75. Out of abundance of caution, however, these intervenors alleged that they had made timely tenders of declarations of their candidacies for nominations for the respective offices they now hold, but that such tenders were declined by the county clerk; and they prayed that their rights as such candidates be protected in the event that this court should hold

that such offices are to be filled at the regular biennial election in November, 1942.

On behalf of the governor and his associates on the state board of canvassers, a motion was filed to dismiss them, as they have no statutory duty to perform in the premises and are neither necessary nor proper parties to the proceedings. This motion was not contested and it is sustained.

As these proceedings were filed on June 30, and the primary election was scheduled for August 4, and the ballots had to be prepared by the county clerk and samples thereof mailed to the various candidates "at least two weeks before the primary," and the party chairmen were privileged to suggest to him whatever changes should be made in the form of the ballots "on or before the eleventh day preceding such primary" (G. S. 1935, 25-211), it is obvious that expedition in the joinder of issues, and in the hearing and decision, were imperative if this litigation was to be of any service to the parties concerned. And so the court authorized the filing of pleadings and briefs in typewriting, and set the cause for argument on July 8. Following the argument, the court held consultation on the cause the same day and decided that the writs of mandamus applied for should be denied—which in effect sustained the position taken by the county clerk—that the elective officers of the city court of Kansas City should hold their offices for four years, and that their official terms were not governed by the constitutional and statutory provisions relating to biennial elections of township officials. While in the interest of all concerned, announcement of the court's decision was made at once, the preparation of our opinion has necessarily been deferred until now, owing to the immediate summer adjournment of the court.

To an understanding of the legal questions involved in these proceedings, it will be necessary to examine the entire series of legislative enactments under which the city court of Kansas City was created, its structure amended from time to time, and under which it now exists. We shall also have to take note of whatever decisions of this court have borne directly or indirectly on this series of enactments, and likewise some constitutional provisions which may affect the general result.

The statutes under which the city court of Kansas City was created and its structure, jurisdiction and procedure amended from time to time are these: (1) Laws of 1897, chapter 107, and chap-

ter 264; (2) Laws of 1903, chapter 212; (3) Laws of 1905, chapters 192 and 193; (4) Laws of 1911, chapter 96; (5) Laws of 1915, chapter 196; (6) Laws of 1917, chapter 161; (7) Laws of 1920, Special Session, chapter 34; (8) Laws of 1923, chapter 133; (9) Laws of 1927, chapter 180; (10) Laws of 1929, chapter 170; (11) Laws of 1933, chapter 171.

But first it should be noted that a township is a territorial and political subdivision of the state and county, organized for the convenient exercise of some of the elementary functions of government. (*Rathbone v. Hopper,* 57 Kan. 240, 45 Pac. 610; *Deerhead Township v. Fritz,* 152 Kan. 110, 114, 102 P. 2d 1035; 63 C. J. 99 *et seq.;* 26 R. C. L. 784 *et seq.*)

Except as modified by the existence of some considerable city within its confines or by its peculiar geographical situation, its territorial extent usually ranges from six miles square in harmony with the original government survey to twice that extent or more. (See official Atlas of Kansas of 1887, pp. 168, 227, 235 and 241.)

By a statute of 1868, G. S. 1935, 80-1404, each city of over 2,000 inhabitants (as in the case of Kansas City) constitutes a separate township.

The original statute creating the city court of Kansas City was chapter 107 of the Session Laws of 1897. Section 1 of that act reads:

"That in Kansas City township, Wyandotte county, Kansas, two new courts be, and are hereby created and established, to be called the city court of Kansas City, first district, and the city court of Kansas [City], second district, respectively; each of which courts shall have one presiding judge whose style of office shall be 'judge of the city court,' and each of said courts shall have a clerk whose style of office shall be 'clerk of the city court.'"

Section 2 of the act defines the court's jurisdiction and procedure to be those of justices of the peace, and deprives the justices of the peace in Kansas City township of all jurisdiction except in civil cases where the amount claimed does not exceed one dollar.

Sections 3 and 20 provide that the terms of the judges of the court shall be two years.

Section 4 provides that for the purposes of the act, Kansas City township shall be divided into two districts, and that one of the city court judges and one of the city clerks shall be elected from one of such districts, and the other judge and clerk from the other district.

Section 6 provides that the salaries of the judges and clerks of the city court shall be paid by the county. Section 9 requires the board

of county commissioners to provide suitable rooms in each of the districts for the holding of the city court. Section 20 provides that terms of the court's elective officials shall be two years and that first election shall be at the same time that city officials are elected—in the spring of the year.

At the same session of the legislature, by chapter 264, Kansas City township was divided into two districts corresponding to those defined by chapter 107, for the purpose of electing two constables, one for each district and no more, who were to be paid annual salaries out of the county treasury.

In 1903 the act creating the city court was amended so as to require its elective officials to be qualified voters of the district in which their division of the district court was located, but that they should be elected at large by the voters of Kansas City township.

In 1905, an act entitled "An act prescribing the jurisdiction of the city courts of Kansas City township," etc., was enacted. It also made some changes in procedure and practice of no present concern.

In 1911 chapter 96 of the Session Laws was enacted, providing for the election of all judges, clerks and marshals of city courts in cities of the first class at the regular elections for state and county officers. (Const., art. 4, sec. 2; Gen. Stat. 1909, sec. 3228; G. S. 1935, 25-101.) This statute contained a preamble in which it was avowed that it was being enacted in deference to the decision of this court in *Fee v. Richardson*, 82 Kan. 190, 107 Pac. 789, which held that the elective officials of the city court of Kansas City township were not city but township officers, and in consequence women who at that time were not qualified electors and could not vote for them. The court did not find it necessary to refer to the constitutional amendment of 1901, but obviously the statute of 1911 was drafted to conform to its terms.

In 1915 section 1 of the statute of 1911 was amended by section 5 of chapter 196, in details of no present concern, and original section 1 was repealed.

In 1917 chapter 161 was enacted. Its title was "An act relating to the city courts of Kansas City, Kansas, amending sections 3210 and 3217, General Statutes of 1915, and repealing said original sections." Section 3210 was the gist of the statute of 1897 which had provided salaries for two constables in Kansas City township and section 3217 was the section of the original statute of 1897 as amended by chapter 212 of the Session Laws of 1903. This statute

of 1917 provided a marshal for each division of the city court of Kansas City, fixed their salaries, and abolished the salaried constables in Kansas City township.

In 1915 salaries for deputy marshals of city courts in cities of over 90,000 inhabitants were fixed at $75 per month (chapter 107), and in 1919, these salaries were raised to $100 per month (chapter 179). Kansas City was the only city in the state having 90,000 population at those dates. (See statistics of State Board of Agriculture, 1915-1916, p. 592; 1919-1920, p. 537.)

In 1920 chapter 34 of the Special Session Laws was enacted. It provided that each division of the city court of Kansas City should have a marshal, and that "one of said marshals·shall be elected every two years from the first and one from the second district of said Kansas City township as bounded and designated by section 4 of chapter 107 of the Laws of 1897." The salaries of the marshals, and the judges and clerks of the city court were again revised, but still made payable from the county treasury. Sections 3210 and 3217 of the General Statutes were *again* repealed, likewise chapter 161 of the session laws of 1917.

Chapter 133 of the Session Laws of 1923 revised the structure, jurisdiction, procedure and other features of the city court of Kansas City, and specifically amended and repealed almost all the earlier legislation which we have briefly summarized above. For present purposes, however, it will suffice to quote the first section of the act:

"SECTION 1. That general sections 3204, 3205, 3206, 3208, 3209, 3210, 3211, 3212, 3213, 3215, 3217, 3221, 3226, 3230, 3231 and 3232 of the General Statutes of Kansas for 1915, and chapter 161, Laws of Kansas 1917, and chapter 179, Laws of Kansas 1919, and chapter 34, Laws of Kansas, special session 1920, be and the same are hereby amended to read as follows: That in Kansas City township, Wyandotte county, Kansas, three courts be and are hereby created and established, to be called the city court of Kansas City, first district; the city court of Kansas City, second district; the city court of Kansas City, third district, respectively; each of which courts shall have one presiding judge, whose style of office shall be 'judge of the city court.' The terms of office of the judges of said courts shall be two years and until their successors are duly elected and qualified, and the first election of such judges, clerk and marshal, respectively, shall be held at the general election in November in the year 1924."

We come now to an examination of chapter 180 of the Session Laws of 1927, which, except in respect to the duration of the official

terms of its elective officials, is the statute under which the city court of Kansas City is now organized and by which its jurisdiction and procedure are prescribed. The first section of the act reads:

"SECTION 1. That in all cities of the first class in the state of Kansas now having or hereafter acquiring a population of more than 110,000 shall be a judicial township, and in such township there shall be established a city court, which shall be composed of two divisions, designated as division number one and division number two, and each of said divisions of such court shall have a presiding judge, whose style of office shall be 'judge of the city court, division number one,' and 'judge of the city court, division number two,' and one clerk, whose style of office shall be 'clerk of the city court,' and one marshal, whose style of office shall be 'marshal of the city court': *Provided,* That this act shall not be construed to abolish any of the city courts of Kansas City township, Wyandotte county, Kansas, now existing, or terminate the office of any officer thereof prior to the second day of January, 1929."

By sections 5, 7, and 9, it is provided that at the general election in 1928 and each two years thereafter, the qualified electors of said judicial township shall elect two judges, one clerk and one marshal to serve as officers of such city court. The salaries of these officials are to be paid out of the county treasury and the board of county commissioners are required to provide and furnish suitable rooms in the courthouse for the use of the divisions one and two of the city court, and suitable rooms convenient to the courthouse for the judge of "said third division" until the expiration of his term of office. The act provides that when it takes effect the justices of the peace "of such townships" shall be stripped of all civil and criminal jurisdiction except civil cases where the amount claimed does not exceed one dollar. Jurisdiction is conferred upon the court, civil and criminal, such "as justices of the peace now have in this state, . . . and all the laws of this state relating to the powers, duties and jurisdiction of justices of the peace, and practice, pleadings and proceedings in justice courts, . . . shall apply to said city court . . . so far as . . . applicable."

All earlier legislation having any conflicting relation to the city court as constituted by this act was repealed in specific terms, with this qualification in section 26:

"*Provided,* That in any city to which this act applies where city courts are now in existence, said courts as now situated shall continue to function and the officers thereof shall perform the duties of their office as now provided by law until the second Monday in January, 1929."

The next enactment relating to the city court of Kansas City was chapter 170 of the Session Laws of 1929, entitled "An act relating to officers of city courts in cities of the first class of not less than 110,000 population in counties having an assessed valuation of less than $200,000,000, amending sections 5, 7 and 9 of chapter 180 of the Laws of 1927, and repealing said original sections."

Section 1 of the act reads:

"That section 5 of chapter 180 of the Laws of Kansas for 1927 be amended to read as follows: Sec. 5. That at the general election in 1932, and each four years thereafter, two judges of such court shall be elected by the qualified electors of said judicial township at large. Each such judge shall at the time of his election be a qualified voter of said township and shall have had five years' active experience in the practice of the law; and he shall hold his office for a term of four years; and shall receive as full compensation for his services the sum of $3,600 per year, payable monthly, to be paid out of the county treasury of the county in which said judicial township is located: *Provided,* The judges of said court elected at the 1928 general election shall hold their offices until their successors are elected and qualified under the provisions of this act."

Sections 2 and 3 of the act likewise extend the official terms of clerk and marshal of the court and fix their salaries and salaries for sundry deputies and assistants—of no present consequence.

The last of this long series of acts pertinent to the city court of Kansas City appears to have been chapter 172 of the Session Laws of 1933, the title of which indicates its character. It reads:

"An act providing for and relating to city courts in cities of the first class having a population of not less than 117,000, and amending section 20-2101 of the Revised Statutes Supplement of 1931, and repealing said section."

The section of the Revised Statutes Supplement to which the title of this act refers is section 1 of the statute of 1927 which we have already examined. This statute is of little present importance except as part of the chronicle of Kansas City court legislation. It changes the requirements of population which may affect the status of the court. The section as amended appears as G. S. 1935, 20-2101.

It has taken much space to list these statutes and to make this very summary abridgment of their contents. This done, however, the legal questions presented in this lawsuit become clear.

The original special act of 1897 creating the city court of Kansas City township was enacted prior to the adoption of the constitu-

tional amendment of 1906 (art. 2, sec. 17), which charged this court with the responsibility of determining whether such a statute was repugnant to the constitutional requirement that all laws of a general nature should have uniform operation throughout the state, or whether the existing circumstances to which the legislation was directed would justify the enactment of a special act. In the early case of *State of Kansas, ex rel. Johnson, v. Hitchcock,* 1 Kan. 178, this court held that the responsibility belonged to the legislature, and not to the court, to determine whether the legislative purpose in a particular situation could be expediently accomplished by a general act or whether a special statute was the most practical way to attain it. (See 10 Kan. Bar Journal, 288-297.)

When the original statute creating the city court of Kansas City township was enacted there was no serious contention that the court was anything other than a more elaborate township court, than that of a justice of the peace, and essentially of the same nature. Prior to the constitutional amendment of 1902 (art. 4, sec. 2), the officials of the court could be elected at any time the legislature saw fit to prescribe. Thereafter, however, the election of township officials had to be chosen biennially as in the case of state and county officers. (G. S. 1935, 25-101, 25-1601.)

By the statute of 1929, chapter 170, the terms of the elective officials of the city court are fixed at four years, beginning with the election of 1932. (G. S. 1935, 20-2105, 20-2107 and 20-2109.) Plaintiffs contend that this extention of the terms of these officers from two years to four years violated the constitution in two particulars, *first,* that the city court of Kansas City remains as it has from its inception in 1897 a township court and its elective officials are township officials, and in consequence their official terms must conform to the constitution. On this point, counsel for plaintiffs cite the case of *Fee v. Richardson,* 82 Kan. 190, 107 Pac. 789, where this court had occasion to say: "The city courts of Kansas City are essentially justice of the peace courts, and the marshals thereof are constables."

Plaintiffs also cite the case of *Clark v. Murray,* 141 Kan. 533, 41 P. 2d 1042, where it was held that the elective term of a judge of the city court of Wichita city township was two years, and not four years, notwithstanding the legislative declaration to that effect in chapter 170 of the Session Laws of 1929, which is relied on by defendants in this action to withstand the plaintiffs' applications for mandamus to require the defendant county clerk to accept the decla-

rations of their candidacies for the elective offices of the city court of Kansas City this year; and that the provisions of the statute of 1929 extending the terms of the elective officers of the Kansas City court have no more constitutional validity as applied to Kansas City than they did as to Wichita.

Turning to the brief of counsel.for the county clerk, the first point raised is that the plaintiffs are estopped to invoke mandamus to assert their right to file for the offices to which they aspire because they delayed unreasonably before attempting to file their declarations of candidacy. It is pointed out that the county clerk officially published the statutory notice of the election on April 9, 1942, as required by G. S. 1935, 25-204, and that said notice gave no intimation of any Kansas City court offices to be filled this year. Without placing our decision on this point, it must be admitted that it has some merit since the remedy sought by *mandamus* does not issue against a public officer as a matter of course. Its invocation against a public officer should be timely, by one who deems himself entitled thereto, so as not to interfere with the orderly routine of the officer's duties. (*Kolster v. Gas Co.*, 106 Kan. 84, 86, 186 Pac. 738.) In the instant case the applications for the writs of mandamus were not filed in this court until June 30. The time for filing declarations of candidacy expired on June 20. (G. S. 1935, 25-205.) This court was scheduled to adjourn on July 11. Obviously the time to formulate the pertinent issues, brief the case and argue it, and for the court to give it mature and thorough consideration was altogether so short that the court would have been justified in declining to entertain the action. However, owing to the seeming urgency of its speedy determination, the primary election being scheduled for August 4, and the county clerk needing all the time the circumstances would permit to prepare and have printed and distributed the ballots to be used thereat, we did entertain the action and reached a decision which was announced on July 8, although this opinion in support of that decision has required much more time for its preparation.

The next argument urged against the issuance of the writ is that if the statute of 1929 fixing the terms of the city court's elective officials is unconstitutional, then the court would have no qualified officials to act, since the last biennial election was held in 1928 in accordance with the statute of 1927 (Laws 1927, ch. 180, secs. 5, 7, 9). This seeming *impasse* is not serious. The officers elected at the last lawful election—whenever it occurred—hold their offices until

their successors are duly elected and qualified. (Const., art. 3, sec. 12.) Moreover, there is no want of lawful authority for the filling of vacant judicial offices. (Const., art. 3, sec. 11; Laws of 1927, ch. 180, sec. 14.)

We come now to what appears to be the strongest point counsel for the county clerk urge to sustain the statute of 1929. Summarizing their argument, they contend that as there is nothing in the constitution which prohibits or limits the creation of courts, the legislature had plenary power to enact the statute of 1927 and to amend it as experience should suggest. Although the city of Kansas City is a township of the familiar and prevailing type recognized by the constitution and general statutes, it was within the province of the legislature to create in Kansas City a township of another and special sort, a *judicial* township, and that it did do so by the statute of 1927, and did endow that distinct type of township with a tribunal fully equipped to transact the judicial business of a court of first instance in that important metropolitan area—and that the legislature did do so irrespective of whatever other courts the constitution and statutes had therefore established for administering the simpler functions of government in Wyandotte township as well as in all the other townships of this state.

The first time the act creating the city court in Kansas City township came before this court for consideration was in the case of *In re Greer*, 58 Kan. 268, 48 Pac. 950, where the statute was upheld against the objections then raised against it. This decision was followed in *Chesney v. McClintock*, 61 Kan. 94, 58 Pac. 993, where the validity of the special act of 1899, chapter 129, creating the court of Topeka was questioned. It was there held that the act was not void because the tenure of office of the elective officers of the court was for a longer term than that then specified in the constitution for township officers. This court said:

"The law in question did not create a township office. It created a tribunal designated 'The court of Topeka.' This the legislature had authority to do, under section 1, article 3, of the constitution. It provided by law for a court inferior to the supreme court. Whatever name might have been given to it, it is a judicial tribunal, created within the limits of the city of Topeka, which it was within the discretion of the legislature to establish." (p. 99.)

In the same opinion the court referred to its decision in the case of *In re Greer*, supra, which it was urged to reconsider, but it held that this court was so entangled in its many earlier decisions in which it had declined to determine whether a general act could be

made applicable to the creation of city courts that it felt bound to reiterate that it was the legislature's prerogative to determine when it was impracticable to deal with a matter by a general act and when a special statute was necessary to attain the legislative purpose. In the opinion, the language of Mr. Justice Johnston, later chief justice, was quoted thus:

"'The old question so often raised is again presented: Was it competent for the legislature to determine whether a general law could be made applicable, and whether a special law was necessary? If the question were a new one, the writer of this opinion would be inclined to the view that the courts should determine in each case whether this constitutional restriction had been violated or not; but the question has been put at rest by a long series of decisions holding that the decision of the question is exclusively for the legislature, and not for the courts.'" (p. 100.)

We do not overlook the fact that the Greer and Chesney-McClintock cases were decided before the adoption of the constitutional amendment of 1902 providing for the biennial elections.

In *Griffith v. Manning*, 67 Kan. 559, 73 Pac. 75, following the adoption of the constitutional amendment of 1902 (art. 4, sec. 2) providing for biennial election of county and township officers, the elective term of a judge of the city court of Kansas City was drawn in question. This court reiterated its pronouncement in *Chesney v. McClintock*, supra, that the office of judge of the city court of Topeka was not a township office, saying that "the law creating the city court of Topeka . . . is identical with the act creating the city courts of Kansas City, so far as this point is concerned."

In the later case of *Fee v. Richardson*, supra, where this court said, "The city courts of Kansas City are essentially justice of the peace courts, and the marshals thereof are constables," the court gave no intimation that it was overruling the earlier cases cited above which had held that the elective city court officers were not township officers. And so at this late date it appears wise to a majority of this court not to disturb the present practice of nominating and electing the officials of the Kansas City court for four-year terms, since this would specifically require the overruling of the cases cited above which have declared that they are not township officers whose terms are for two years and to be chosen at the biennial elections in November as provided in article 4, section 2 of the constitution.

In our recent case of *Clark v. Murray*, supra, where the duration of the term of a judge of the city court of Wichita city township

was in question and where it was held that the elective term of such judge was two years, and should be filled at the regular biennial election in November, this court in a careful opinion by Mr. Justice Thiele took note of substantial differences between the city court act of Wichita and the city court acts of Kansas City.

The writ of mandamus is denied and judgment is entered for defendant.

HOCH, J. (concurring specially): The court opinion rests the decision on the grounds that some of the earlier cases cited held that elective city court officers are not township officers, and that "at this late date it appears wise to a majority of this court not to disturb the present practice of nominating and electing the officials of the Kansas City court for four-year terms." Personally, I would prefer to meet the instant issue squarely on its merits.

While the statutes involving the establishment of city courts have had a more or less devious history, and it may be difficult to harmonize various statements found in the decisions which deal with them, the question before us boils down to a simple one, in my opinion. The pertinent provision of G. S. 1935, 20-2101, here involved, reads as follows:

"That in all cities of the first class in the state of Kansas now having or hereafter acquiring a population of more than 117,000 shall be a judicial township, and in such township there shall be established a city court which shall be composed of two divisions," etc.

Under the provisions of section 20-2105, the term of the judges of such courts is fixed at four years; and a like term is prescribed for clerks and marshals of such courts under the provisions of sections 20-2107 and 20-2109, respectively.

Two provisions of the constitution are principally involved. Section 2 of article 4 provides:

"All county and township officers shall hold their offices for *a term of two years.*" (Italics ours.)

Section 1 of article 3 provides:

"The judicial power of this state shall be vested in a supreme court, district courts, probate courts, justices of the peace and *such other courts,* inferior to the supreme court, *as may be provided by law.*" (Italics ours.)

That the legislature has broad power to establish courts, inferior to the supreme court, is not denied. The question here is whether the provision for four-year terms contravenes the constitutional provision, *supra,* which fixes the terms of "township officers" at two

years. If they are in fact "township officers" within the meaning of the constitution, then the four-year provision is clearly invalid.

The principal ground advanced for calling them "township officers" is that section 20-2101 provides that there shall be *"a judicial township,"* in every city having a population of more than 117,000, and that *"in such township"* there shall be a "city court."

There is no such thing as a "judicial township" known to the constitution. It is a term used solely in this statute and in no place in the statute other than as quoted above is the.term employed. By no provision of the statute is this "judicial township" clothed with the characteristics or attributes of a "township" as that term is used in the constitution or in the statutes generally. The legislature had ample power under the constitutional provision, *supra,* to establish this city court, The law should not be invalidated simply because the legislature stuck into this statute the manufactured term "judicial township." In my opinion the term, which is nowhere defined or given substantial meaning, should be treated simply as surplusage. To do so is in line with the well-established principle of upholding rather than striking down a statute where it is possible, within reason and without violating clear provisions, to do so. In this case the framers might just as well have said that in each city covered by the act there should be "a judicial district," or a "judicial community" or a "judicial municipality," or a judicial whatnot, and that "in such district" a city court should be established. Or—and far better—used no such term of any kind, and simply established the court as they had power to do.

Attention is called to the fact that the salaries are paid out of the general fund of the county. It is also true that all fees are to be turned into the county treasury. (G. S. 1935, 20-2119.) Such provisions are not unique, but are contained in various statutes whose validity has been unsuccessfully attacked. Similar provisions are contained in the statutes under which the city courts of Atchison, Leavenworth, Topeka and Wichita were established and are maintained. (G. S. 1941 Supp. 20-1507, 20-1809; G. S. 1935, 20-1518, 20-1820, 20-1910, 20-1926, 20-2015 and 20-2019.)

It should also be noted that not only do all fees go to the county, which in turn pays the salaries of the court officials, but that the court exercises a county-wide jurisdiction. (G. S. 1935, 20-2103.)

I shall not here discuss the broad question of special acts, as distinguished from general acts, nor the proper classification of the

statutes under which the Kansas City court is maintained. As to the cities in which such courts ·may be established, the act is general in form. It is at least not burdened with numerous conditions precedent to its applicability such as have made ridiculous various special acts disguised as "general" acts and which have been stricken down by this court. The pertinent part of the first section of the act, which defines the cities wherein the court is·to be established, was last amended by chapter 172 of the Laws of 1933, and now reads as follows:

"That in all cities of the first class in the state of Kansas now having or hereafter acquiring a population of more than 117,000 [there] shall be a judicial township, and in such township there shall be established a city court," etc. (G. S. 1935, 20-2101.)

Thus the only condition stated in the act as requisite to establishment of a city court under this statute is that the city have a population of more than 117,000.

Some observations on this subject of general and special legislation were made by the writer in a recent case, and without extending this comment by repetition I venture merely to call attention to what was there said. (*Higgins v. Johnson County Comm'rs*, 153 Kan. 560, at·page 566, 112 P. 2d 128.)

DAWSON, C. J. (dissenting): I should have been content to deny the writ of mandamus prayed for in this case on the ground of the shortness of the time we had to consider the importance of the question presented. The act which extended the length of the terms of the elective officials of the city court of Kansas City from two years to four years was enacted in 1929, some thirteen years ago. The present action hurriedly thrown together on the threshold of the primary election and on the threshold of this court's adjournment gave neither counsel nor court sufficient time for its thorough lawyer-like consideration. If the city court elections of the last dozen years were irregular, the want of a regular election this year would not be very serious since the statute provides that the elective officers of the court—whatever the length of their terms—shall hold their offices until their successors are lawfully elected and qualified. (*Murray v. Payne*, 137 Kan. 685, 689 *et seq.*, 21 P. 2d 333.)

My dissent in this case is virtually the same as my special concurrence in *Clark v. Murray*, 141 Kan. 533, at page 540, where in

reference to the several city courts of this state created by special acts I said, "Those courts are still township courts and their functionaries are township officers, or the statutes creating them are waste paper." This is especially true, in my opinion, in respect to any fundamental changes that have been made in their organization, jurisdiction and procedure, since the people of this state have peremptorily imposed on this court the duty to determine and enforce the constitutional mandate concerning general and special acts. (Art. 2, sec. 17, as amended in 1906.) Since that time no city court created by special act has withstood the scrutiny of this court. They have all fallen like grain before the sickle when tested by this constitutional principle. See *State v. Nation,* 78 Kan. 394, 401, 96 Pac. 659, where the special act creating the city court of Chanute was held to violate article 2, section 17 of the constitution. The same fate befell the city court of Hutchinson, in *State, ex rel., v. Deming,* 98 Kan. 420, 158 Pac. 34; likewise the city court of Arkansas City, in *Howard v. McIntosh,* 118 Kan. 591, 235 Pac. 1034. The circuit court of Wyandotte county succumbed to the same fate and by the same cause, in *State v. Hutchings,* 79 Kan. 191, 98 Pac. 797.

I do not doubt that any of the city court acts created by special enactment prior to the constitutional amendment of 1906 can be amended by another special act where experience or expediency seems to warrant it. (*State v. Prather,* 84 Kan. 169, 112 Pac. 829.) But any such amendment must be germane and pertinent to the original special act. Where, as is argued in this case, the statute of 1927 created a new township out of Kansas City township, to be known as a "judicial township," and created an altogether different court from its predecessor which was the city court for Kansas City township, then I repeat what I said in *Clark v. Murray,* supra, that the act "is waste paper," because it falls plainly under the ban of special legislation by all the tests ever applied by this court. (See this court's opinion of the futility of giving a special act the camouflage of a general enactment in *Higgins v. Johnson County Comm'rs,* 153 Kan. 560, 112 P. 2d 128.)

I can imagine no more transparent sophistry than the idea—which counsel for defendant would uphold—that something new, distinct and different from the ordinary township mentioned in the constitution and the general statutes was brought into being by the act

of 1927 which creates a "judicial" township in the corporate terri-
tory of Kansas City and which sets it apart in a class by itself so
that the constitutional provision for biennial township elections in
November does not apply thereto. And if the officials of this court
are not officers of a regular township as contemplated by the con-
stitution and general statutes, there is no justification for taking
money out of the county treasury to pay their salaries.

I think it accurate to add that since the amendment of 1906 was
adopted, the consistently critical attitude of this court toward re-
peated legislative attempts to create courts by special acts has been
the steadfast faith and belief of the justices that the establishment
and preservation of a harmonious and uniform system of adminis-
tering justice is the most important single function of our state gov-
ernment. There is no possible justification for fixing the terms of
the elective officials of the city court of Kansas City at four years,
when all such officials in the other cities of the state are elected for
two years. And the provision that the act of 1929 (chapter 170) is
not to regulate the length of the terms of city court officials *unless
the city is located in a county of less than $200,000,000 assessed
valuation* is nothing less than preposterous. The act of 1929 is a
special act not warranted by any rational test, and this court should
not hesitate to enforce the mandate imposed on it by the constitu-
tional amendment of 1906. I therefore dissent.