This is an appeal brought by A. W. Dula and others against the Board of Trustees of the Lenoir Graded School, asking for a writ of mandamus to compel the said Board of Trustees of the Lenoir *Page 451 
Graded School to open and operate the said schools in Lenoir for the balance of the school term, which began in September, 1918, and was to close about 15 May, 1919.
The board of trustees employed Horace Sisk as superintendent of the graded school, Miss Mary Coffey as principal of the school, and a full crops of teachers of about twenty to run said school, to begin about the first of September, 1918, and to continue until about 15 May, 1919, and contracted to pay said superintendent and teachers a stipulated price, making a full term of school of about eight and one-half months for the year. The said graded school opened on 1 September, and continued for about a month, when an epidemic of influenza broke out in the town and school district, and about 2 October the school was suspended on account of said epidemic and continued suspended indefinitely, the said trustees hoping that the epidemic would die out and they would be justified in opening the school for the balance of the school term.
There was considerable agitation in the town, both pro and con, as to opening the school, some clamoring for it to be opened and others insisting that it ought not to be opened. About 1 January, 1919, the epidemic reached its danger point and a great number of people in the town were down with the disease and the doctors were not able to control it, and about 9 January the board of trustees met and decided that it was unwise and dangerous to the health of the town and school to open the school for the spring term, and they decided and announced their purpose not to open the school again until (428) September, 1919.
Soon after this meeting and decision of the trustees the influenza abated and gradually got better, until about 1 February it had almost disappeared; the trustees then consulted with Mr. Sisk, their superintendent, and Miss Coffey, the principal of the school, and were advised by them that it was inexpedient and inadvisable to open the school for the spring term at that late date, giving as their reason that the shortness of the term would not permit the pupils or scholars to make the grades and pass from their present grade at the opening of the September term, 1919, to the next grade above, and their best judgment dictated to them that it would be a waste of time and money to run the school for so short a period; thereupon the plaintiff asked for his writ of mandamus to compel them to open the school.
After the reading of the complaint, answer, and replication his Honor instructed the defendants to give their reasons for their action in writing, whereupon they filed the following report:
To His Honor, JUDGE B. F. LONG: *Page 452 
As directed by your Honor, the Board of Trustees of the Lenoir Graded School beg leave to make the following report:
1. We wish to assure your Honor that in all we have done and left undone, in the matter of directing the affairs of the Lenoir Graded School since the beginning of the term in September up to the present time we have had no feeling whatever in the matter, and have been influenced solely by what we conceived to be for the best interests of the life and health of the teachers and pupils and of the school.
2. From the early part of October until the present time the school has been closed by the quarantine put in force by the County Board of Health, which we understood had lawful authority to place such quarantine, and we were so advised by counsel.
3. As to opening the school at this time in the event of all quarantine being lifted, we are of the opinion that it would be impractical and inadvisable for the following reasons:
a. We were advised by Mr. Sisk, the superintendent, about the first of January that on account of the time already lost up to Christmas it would be possible to complete the year's work by beginning not later than 6 January, running the school six days a week, condensing the work as much as possible, and extending the term to 15 June, but in his opinion, and from his observation in other schools, this is not a practical nor satisfactory working plan and would not be advisable, the same having been abandoned by all the schools he has seen try it.
He states further that a part of the teachers, at least, in order to comply with the regulations of the State Board of Education (429) and to retain their certificates, must attend summer school or summer institutes, which are held in the period from 15 June to the last of August.
b. Miss Mary Coffey, principal of the High School, states to our board that teaching six days a week and extending the term to 15 June is, in her opinion, not satisfactory and not practical, and cannot be made productive of good results for the reason the teachers, as well as the pupils, must have some time to themselves, and neither can do satisfactory work without regular periods of rest. Miss Coffey is a most efficient teacher and has been connected with the school almost since the beginning in 1903.
If it was barely possible to complete the year's work by beginning 6 January, we feel that it would be altogether impossible to do so if the school was opened at any later date.
4. As we were not permitted by the quarantine to open the school on 6 January, and as on 8 January the patrons of the school in an *Page 453 
election indicated by a vote of 150 to 70 that they wanted the school closed for the year, and the Country Board of Health and our school board having agreed to abide by the wishes of the majority of the patrons, regardless of our individual opinion, we decided to close the school for the year, and felt it our duty as trustees to settle with and discharge teachers as rapidly as possible. So far we have settled with and discharged twelve out of nineteen teachers, many of whom have secured other positions, and therefore are not available for us at this time.
Our experience in employing teachers tells us that it is practically impossible to secure competent teachers at this time of the year, and that it is far better to have no teacher than an incompetent one. Six of the other teachers are engaged in teaching private schools and we understand are getting as good or better pay than their regular salaries, and this pay is to be deducted from their regular salaries from the graded school.
5. For the reasons above set forth and for the shortness of the time between now and the end of the school term, which is about 15 May, 1919, we have unanimously decided, in the exercise of our best judgment and discretion, not to open said school for the rest of the term. In doing this we feel that we are acting for the best interests of both patrons and children of said school, and we sincerely wish that the length of time between this date and the end of the term was of sufficient length to permit us to open said school and do valuable work, but we are mindful of the fact that the time is so short that whatever is done in the way of teaching between now and the end of the term would all have to be repeated, rehashed, and gone over again at the beginning of the next term, as it is impossible for the children in any grade of the said school to complete their grade in so short a time, and they cannot, under the circumstances, even if the school were opened (430) now, be advanced to the grade above.
Respectfully submitted,
 W. B. WATSON, Chm. V. H. BEACH. V. D. GUIRE. G. F. HARPER. H. M. TEAGUE. K. A. LINK.
The facts stated in this report were substantially found to be true except his Honor held that the proceedings for quarantine were irregular, and that there was no necessity for keeping the school closed after 1 February, 1919, on account of influenza, and that the defendant board *Page 454 
then had the right to open the school. Also, that there is sufficient evidence to justify the belief that if the trustees thought proper to open the school now that they could obtain teachers to do the work, and he concluded his judgment as follows:
"But the defendants, as it seems to me, had the discretion land they exercised it, and I cannot say that they did so in bad faith or arbitrarily, so that I conclude that I cannot issue the writ of mandamus as prayed by the plaintiff, and the same is denied."
To this the plaintiffs excepted and appealed to the Supreme Court.
The graded schools of Lenoir were established under ch. 132, Priv. Laws of 1903, in which, after appointing a board of trustees, it is provided in section 13 of said act "That said board of graded school trustees shall have exclusive control of all public schools in said school district, free from supervision and control of the county board of school directors and the county superintendent of schools of Caldwell County; shall prescribe rules and regulations, not inconsistent with this act, for their own government and for the government of such schools; shall prescribe the qualifications, employ and fix the compensation of all officers and teachers of such schools; shall cause to be taken from time to time, in accordance with the general school law of the State, an accurate census of the school population of said school district, and shall exercise such other powers as may be necessary for the successful control and operation of said graded schools."
This clearly leaves the control, management, and supervision of the schools to the judgment and discretion of the trustees, and as his Honor has refused to find that they have acted capriciously or (431) arbitrarily the courts cannot interfere.
"In numerous and repeated decisions the principle has been announced and sustained that courts may not interfere with discretionary powers conferred on these local administrative boards for the public welfare unless their action is so clearly unreasonable as to amount to an oppressive and manifest abuse of discretion. Jeffress v. Greenville, 154 N.C. 499; Boardof Education v. Board of Comrs., 150 N.C. 116; Rosenthal v. Goldsboro, N.C.149 N.C. 128; Ward v. Comrs., 146 N.C. 534; Small v. Edenton, 146 N.C. 527;Tate v. Greensboro, 114 N.C. 392; Broadnax v. Groom, 64 N.C. 244."Newton v. School Com., 158 N.C. 188.
The rule is otherwise, and mandamus will issue, when no discretion is vested in the officer to compel the performance of a specific ministerial duty imposed by law. Withers v. Comrs., 163 N.C. 344. *Page 455 
It will also issue when officers, vested with discretion, will not act and refuse to exercise their discretion one way or the other to compel action on their part, "but the function of the writ is merely to set in motion. It will not direct how the duty shall be performed or the discretion exercised. To do so would be to substitute the judgment and discretion of the court issuing the mandamus for that of the court or officer to whom it was committed by law." Battle v. Rocky Mount, 156 N.C. 335.
In this case the trustees have acted, and as there is no finding that they have not been using their best efforts to promote the public welfare, or that they have been arbitrary, the writ of mandamus cannot issue.
Affirmed.
Cited: Person v. Watts, 184 N.C. 506; Lee v. Waynesville, 184 N.C. 568;Corporation Comm. v. R. R., 185 N.C. 456; School Comm. v. Bd. of Ed.,186 N.C. 648; Bd. of Ed. v. Comrs., 189 N.C. 652; Harden v. Raleigh,192 N.C. 398; Moreland v. Wamboldt, 208 N.C. 37; Moore v. Bd. of Ed.,212 N.C. 504; Messer v. Smathers, 213 N.C. 189; In re Appeal of Parker,214 N.C. 55.