This was an action to restrain the Asheville school board from opening and establishing the Asheland Avenue school building in the city of Asheville, North Carolina, as a school for colored children.
At the hearing before the court, from the pleadings, affidavits, and record evidence, the court found the following facts:
"1. That the plaintiffs are property holders on Asheland Avenue, in the city of Asheville, all residing north of the Asheland Avenue school building herein referred to.
"2. That the defendants, W. M. Smathers, W. A. Goodson, W. Randall Harriss, Mrs. Fred Hampton, and Mrs. Robert Russell, constitute the Asheville school board, having been appointed on said board by an Act of the General Assembly of North Carolina, ch. 114 of the Private Laws, Session 1937.
"3. That on 1 July, 1937, the Asheville school board unanimously adopted the following resolution:
"`In view of the overcrowded conditions existing in the Negro schools of the Asheville City School Administrative Unit, be it resolved by the Asheville school board, at a meeting held on 1 July, 1937, that the Buncombe County board of education is unanimously requested to take early steps to provide school facilities to relieve the overcrowded conditions now existing in the Negro schools of the Asheville city school administrative unit.'
"4. That immediately after adoption of said resolution the chairman of said school board was directed to deliver a copy thereof to the chairman of the Buncombe County board of education, which was done in the form of a letter signed by R. H. Latham, secretary of said board, to which letter was attached a statement of certain facts as a basis for the request of said board to the board of education of Buncombe County, which said letter and memorandum attached thereto and designated at the top thereof, `Some 1936-1937 Facts and Figures — The Negro *Page 185 
Schools,' which letter and attached statement marked defendants' Exhibit `A,' are hereto attached and made a part hereof.
"5. That on 28 July, 1937, the board of education of Buncombe unanimously adopted and transmitted to the Asheville School board the following resolution:
"`Be it resolved, by the board of education of Buncombe County, that the school board of the city of Asheville administrative unit be, and it is hereby, granted by this board permission to use any and all school buildings located within the limits of the territory embraced within said administrative unit for school purposes only.'
"6. That on said 28 July, 1937, the Asheville school board, upon the receipt of said resolution from the Buncombe County school board, unanimously adopted the following resolution:
"`Be it resolved, that in view of the resolution of the Buncombe County board of education granting permission to the city administrative unit to use any and all school buildings located within said administrative unit, that the Asheville school board accept at this meeting on 28 July, 1937, the Asheland Avenue school building on Asheland Avenue, Asheville, North Carolina, to be used exclusively for school purposes.
"`Be it further resolved that the excess colored elementary students residing in the territory surrounding the Asheland Avenue school building be transferred from schools they are now attending to the Asheland Avenue building, and that proper school teachers be assigned to the Asheland Avenue building.'
"7. That the Asheville school board, pursuant to instructions given to its business manager on 29 July, 1937, for putting the Asheland Avenue school building in proper repair, was thus engaged, when a temporary restraining order was served upon the defendants upon application of the plaintiffs herein, and that further work on said building was discontinued.
"8. That the Asheland Avenue school building herein referred to is a 12-room, 2-story brick building, which building up to .... May, 1929, was used as an elementary school for white children, at which time the city school authorities discontinued the use of said building on account of excessive cost for operating and maintaining said school.
"9. That the city of Asheville was made a local tax district, known and designated as the `Asheville Local Tax School District,' by virtue of ch. 149, Private Laws of North Carolina, Session 1931, which act is in words and figures as follows: `An act providing for the appointment of a school board for the Asheville Local Tax School District, and defining its powers and duties.' . . . *Page 186 
"`Section 4. That said Asheville school board shall have the control and custody of all the school buildings located in the Asheville local school district, with power and authority to repair the buildings, make additions to and alterations thereof, replace or erect new buildings if the funds are available, and otherwise care for the property and employ and fix the compensation of all the employees that are necessary for the proper maintenance, repair and care of said school buildings and school property.' . . .
"10. That said Asheland Avenue school building can be repaired and reconditioned and made suitable for operating it as a school building for colored children in the elementary grades at a cost of about one thousand ($1,000) dollars, and that practically all of the children who would attend said school can reach said building without going over that portion of Asheland Avenue above said building.
"11. That all the area in and around the Asheland Avenue school building, with the exception of that portion of said avenue just north of said building to Patton Avenue, is inhabited by Negroes, and has been for a number of years, that is to say, the lower end of said avenue from its intersection by Silver Street on the west at a point about opposite the upper end of the playground of said school to the lower end thereof, at its intersection with Phifer Street, is occupied exclusively by Negroes; that South Grove Street, running parallel to Asheland Avenue where it intersects Silver Street, is occupied exclusively by Negroes; that Blanton Street, intersecting the south side of Silver Street, near its intersection with South Grove Street, is occupied by Negroes, said street extending parallel to South French Broad Avenue to its intersection with Southside Avenue on the west or northwest; that Phifer Street, running from the northwest side of the Southside Avenue to the east side of French Broad Avenue, is occupied by Negroes; that Bartlett Street, east of its intersection by South French Broad Avenue, is occupied on both sides by Negroes; that Adams Street, running south from Bartlett Street to Southside Avenue, is occupied on both sides by Negroes; that the last two or three houses on the east side of French Broad Avenue, north of its intersection with Southside Avenue, are occupied by Negroes; that all of Southside Avenue, from its intersection with Biltmore Avenue on the west to the Asheville depot, is occupied on both sides by Negroes; that Short Bailer Street, intersecting on the east the lower end of Asheland Avenue, below the building, runs parallel to and back of Asheland Avenue school building to a point above said building a short distance below Hilliard Avenue, where it again intersects the east side of Asheland Avenue, and is occupied, and has been for a long number of years, on both sides, occupied exclusively by Negroes, said street running for a long distance immediately in the rear of the property of the plaintiffs herein. *Page 187 
"12. That Hill Street School is located about two blocks from the intersection of the south margin of Patton Avenue with Clingman Avenue, and that Clingman Avenue runs in a southwesterly direction toward the Asheland concrete bridge, and that both sides of Clingman Avenue are occupied by Negroes, as well as both sides of Rector Street, which intersects the west margin of Clingman Avenue, and runs thence to the south margin of Patton Avenue below its intersection with Clingman Avenue; that the distance from Hill Street School to the last house on Clingman Avenue is six-tenths of a mile, and the distance from the last house on the lower end of Clingman Avenue to Asheland Avenue school building is nine-tenths of a mile via
Hilliard Avenue.
"13. That north of the said school building and between said building and Hilliard Avenue is a large business establishment known and designated as the M. M. Body Works, which establishment is operated for the purpose of repairing automobiles, and that at the intersection of the east side of Asheland Avenue with the south margin of Hilliard Avenue is a business establishment, and that the south side of Hilliard Avenue running east to Coxe Avenue is exclusively business property; that on the northwest corner of Hilliard Avenue and Asheland Avenue is located a large new filling station which is just about to begin business, and that on the southwest corner of Asheland and Hilliard Avenue is located a small combination residence and antique shop, and that immediately west thereof is a large garage at the southeast corner of Hilliard Avenue and South Grove Street, and that a considerable portion of the east side of Asheland Avenue between Aston Street and Patton Avenue is vacant or unimproved property, and that there is a large business establishment at the intersection of the south margin of Patton Avenue with the west margin of Asheland Avenue, and that there is a large dwelling house on the east side of Asheland Avenue a short distance north of the school building, which is now and has been vacant for a long period of time, and that Short Bailey Street runs from a point several hundred feet below the school building and back thereof parallel to Asheland Avenue and up to a point a short distance south of Hilliard Avenue where it intersects the east margin of Asheland Avenue near the said M. 
M. Body Works' place of business, and that said Short Bailey Street is occupied exclusively by Negroes.
"14. That the map or plat made by R. L. Maynard, city engineer, and offered in evidence by the defendants, correctly shows the streets from the intersection of Clingman Avenue with Patton Avenue; thence with Patton Avenue to College Street via Pack Square and with College Street to Hildebrand, Mountain and Clemmons Streets, and the other streets lying east of Biltmore Avenue and the territory between the intersection of Southside Avenue with Biltmore Avenue, and thence *Page 188 
with Southside Avenue to Depot Street; thence along Depot Street and Clingman Avenue to its intersection with Patton Avenue, which map or plat is hereby made a part of this findings of fact.
"15. That the distance from the Stephens-Lee School to Asheland Avenue school building is one mile via Southside Avenue and Asheland Avenue, and that the distance from the Mountain Street school building to the Asheland Avenue school building via nearest route is one and one-half miles.
"16. That the Asheland Avenue school building will accommodate about 500 or 600 children; that said building has reasonable playgrounds for such children as may attend said school, and that said building is located in an area populated entirely by colored people, except that portion of Asheland Avenue immediately north of said building, and that the portion of said avenue north of said building is not exclusively residential property.
"17. That the Stephens-Lee (elementary and high school) building has twenty-one classrooms and twenty-nine teachers, and that the children of the sixth grade and 7A grade have only half-time instruction; that the Mountain Street school building has twelve rooms and fourteen teachers, and that the pupils of the first grade have only half-time instruction.
"18. That the opening and use of said school building as a school for colored children will not depreciate the property of the plaintiffs.
"From the foregoing facts it is considered, ordered and decreed by the court that the Asheville school board has fairly and properly exercised the discretion vested in said board by law in respect to the selection of the Asheland Avenue school building for the operation of a school for the colored children of the Asheville city school administrative unit, and that the restraining order heretofore issued by this court be and the same is hereby vacated, dissolved, and set aside."
From judgment dissolving the restraining order the plaintiffs appealed.
The detailed and definite findings of fact made by the judge of the Superior Court, based upon the pleadings, affidavits and record before him, fully sustain his conclusion that the temporary restraining order should be vacated and dissolved, and in this we concur. The action of the Asheville school board, in whom is vested the power and discretion to control the school buildings in Asheville and to regulate their use for public education of all the children of the city, was *Page 189 
not unreasonable, nor influenced by improper motive, nor in violation of law. The courts cannot undertake to control the exercise of the powers conferred upon the local school authorities who are charged with the duty of providing for the education of the children in the community, unless their action be so clearly unreasonable as to amount to an oppressive and manifest abuse of discretion, of which there is no evidence in this case.Moore v. Board of Education, 212 N.C. 499; Crabtree v. Board ofEducation, 199 N.C. 645, 155 S.E. 550; Clark v. McQueen, 195 N.C. 714,143 S.E. 528; Board of Education v. Forrest, 190 N.C. 753,130 S.E. 621; McInnish v. Board of Education, 187 N.C. 494, 122 S.E. 182;School Com. v. Board of Education, 186 N.C. 643, 120 S.E. 202;Davenport v. Board of Education, 183 N.C. 570, 112 S.E. 246; Dula v.School Trustees, 177 N.C. 426, 99 S.E. 193; Newton v. School Com.,158 N.C. 186, 73 S.E. 886;Broadnax v. Groom, 64 N.C. 244.
The judgment of the Superior Court is
Affirmed.