TROY BROWN, MRS. R. F. YOUNG, H. YOUNG, D. W. BEAUCHAMP AND J. F. ROBINSON, IN BEHALF OF THEMSELVES AND ALL OTHER CITIZENS AND RESIDENTS AND TAXPAYERS OF BUNCOMBE COUNTY WHO WISH TO MAKE THEMSELVES PARTIES, PLAINTIFFS, v. COKE CANDLER, GEORGE YOUNG, JOHN VANCE, CONSTITUTING THE BOARD OF COUNTY COMMISSIONERS OF BUNCOMBE COUNTY; DR. B. E. MORGAN, C. C. BELL, R. C. TORIAN, GLENN WEST AND JOHN M. JAMES, CONSTITUTING THE BOARD OF EDUCATION OF BUNCOMBE COUNTY, AND T. C. ROBERSON, SUPERINTENDENT OF SCHOOLS OF BUNCOMBE COUNTY, DEFENDANTS.

(Filed 10 December, 1952.)

**1. Appeal and Error § 40c—**

While the court's findings of fact upon the hearing for an interlocutory or preliminary injunction are reviewable on appeal, they will not be disturbed when the evidence justifies and requires such findings.

**2. Schools § 6a—**

While school authorities have the discretionary power to select sites for new schools and to change the location of existing schools, G.S. 115-85, their action in this regard may be enjoined when it is without authority of law, or when the selection of a proposed site is so clearly unreasonable as to amount to a manifest abuse of their discretion.

**3. Same—**

A "school district" is the equivalent of a "township" within the meaning of G.S. 115-61, and therefore the selection of a site by the school authorities for the sole high school within a school district is not forbidden by the statute even though it result in two high schools within the township.

**4. Same—**

Even though a county home be construed a county building within the purview of G.S. 153-9 (9), the statute refers to a change in the location of a county building, which embraces the space occupied by the building and such adjacent land as is reasonably required for its convenient use, and not to changes in the use of a part of the site of a county building, and therefore the statute does not preclude school authorities from selecting, without advertising, a part of the grounds of a county home for the site of a high school when its use would not interfere with the use of the remainder of the site for a county home.

BROWN v. CANDLER.

**5. Same—**

> The fact that the site for a high school selected by the school authorities in a mountainous section of the State may be approached only by a crooked highway and over a narrow bridge, and that there may be other satisfactory sites for such school, does not compel or support the conclusion that the school authorities abused their discretion in selecting the site.

PARKER, J., took no part in the consideration or decision of this case.

APPEAL by plaintiffs from *Bobbitt, J.,* at March Term, 1952, of BUNCOMBE.

Suit by taxpaying electors for permanent injunction enjoining conveyance of county land by board of county commissioners to county board of education for use as site of new high school building heard on application of plaintiffs for an interlocutory or preliminary injunction to restrain such conveyance until the final trial of the suit.

The evidence presented to the judge on the hearing of the application was sufficient to establish the matters recited in the numbered paragraphs set forth below.

1. The Buncombe County Administrative Unit includes the Leicester School District and the West Buncombe School District. Each of these districts lies within the bounds of Leicester Township, which is one of the larger townships of Buncombe County, and contains a union school, *i.e.,* a school embracing both elementary and high school grades, which has been in continuous operation for a period of time antedating the year 1923.

2. The high school department of the West Buncombe School serves a portion of Leicester Township, and the high school department of the Leicester School serves the remainder of Leicester Township and the adjacent Township of Sandy Mush. Each of these high school departments is a standard high school.

3. In 1950, the Board of Education of Buncombe County, acting with the approval of the State Board of Education, adopted a comprehensive plan of organization covering the entire school system in the portion of Buncombe County committed to its charge. This plan of organization was devised by the Board of Education of Buncombe County upon a consideration of all relevant factors, and was based in large measure upon recommendations made to it by the State School Survey Panel and an independent advisory group of citizens of Buncombe County who surveyed and studied the educational needs of the school population of the Buncombe County Administrative Unit. The voters of Buncombe County have approved the issuance of county bonds to defray the expense of erection of the new school buildings required for the consummation of the plan of organization.

4. The plan of organization calls for the continued operation of the elementary school and high school departments of the union school in the Leicester School District; the use of all the existing buildings in the West Buncombe School District for elementary school purposes; and the erection of a new high school building at a new site in the West Buncombe School District to serve the high school children residing in the West Buncombe School District and portions of three other school districts lying outside the bounds of Leicester Township. Under the plan of organization, the new high school building to be erected in the West Buncombe School District is to house a consolidated standard high school to be known as the West Buncombe Consolidated High School.

5. Subsequent to the adoption of the plan of organization covering all of the schools in the Buncombe County Administrative Unit, the Board of Education of Buncombe County, acting with the approval of the State Board of Education, selected approximately 30 acres of land lying within the bounds of the West Buncombe School District as the site for the West Buncombe Consolidated High School building. In making the selection, the Board of Education of Buncombe County accepted a recommendation made to it by an advisory committee composed of residents of all the areas to be served by the West Buncombe Consolidated High School, who had been requested "to suggest the most suitable location for the site of the new consolidated high school."

6. The 30 acres chosen as the site for the West Buncombe Consolidated High School building are a part of a tract of 177 acres owned by Buncombe County in fee simple and known as the "Old County Home Property." Subsequent to the event described in paragraph 5, the Board of Commissioners of Buncombe County and the Board of Education of Buncombe County entered into a contract whereby the board of county commissioners has agreed to convey the 30 acres to the county board of education in fee simple for use as the site for the new high school building, and whereby the county board of education has promised to pay the board of county commissioners a stipulated price for them. These boards will forthwith carry out their contract unless they are enjoined by the court from so doing. No publication of any notice of the proposed conveyance has been made.

7. The Buncombe County Home for the Aged and Infirm was located on the 177-acre tract until 1946, when the old county home building was condemned by the State Commissioner of Insurance and razed to the ground by the board of county commissioners. Since that time the Board of Commissioners of Buncombe County has maintained the county home for the aged and infirm in a building of modern brick construction commonly called the Boys' Reformatory Building on account of its former use. This structure is half a mile distant from the spot occupied in times

past by the old county home building, and stands on a tract of 100 acres owned by Buncombe County in fee simple and known as the Brookshire Land. The 177-acre tract and a portion of the Brookshire Land are now used as a county farm to produce food for the inmates of the county home and the county jail. The county home is under the direction of a county home superintendent, and the county farm is under the management of a county farm supervisor. The operations are separate in all respects. The 30 acres do not embrace the spot formerly occupied by the old county home building, and their "sale and conveyance will not affect the desirability or usefulness of the present county home site."

On 23 February, 1952, the plaintiffs, who are taxpaying citizens and residents of Buncombe County, brought this action against the defendants Coke Candler, George Young, and John Vance, constituting the Board of Commissioners of Buncombe County, and Dr. B. E. Morgan, C. C. Bell, R. C. Torian, Glenn West, and John M. James, constituting the Board of Education of Buncombe County, and T. C. Roberson, Superintendent of Public Instruction of Buncombe County, to obtain a permanent injunction enjoining the conveyance of the 30 acres by the board of county commissioners to the county board of education for use as the site of a building to house the West Buncombe Consolidated High School.

The complaint lays claim to the injunction sought on these alternative grounds: (1) That the statutes incorporated in G.S. 115-61 and subdivision 9 of G.S. 153-9 deny to the defendants the legal power to select and use the 30 acres as the site for the West Buncombe Consolidated High School; (2) that the location of the West Buncombe Consolidated High School on the 30 acres would be so clearly unreasonable as to amount to a manifest abuse of any discretionary power lodged in the school authorities to select a site for such school because the approach to the 30 acres is "over a narrow bridge . . . and a crooked highway" and because a satisfactory site for such school can be found in "the Beaverdam Ward of Asheville Township" or elsewhere in "that part of Buncombe County north of the French Broad River." The answers controvert the validity of each of these claims.

The plaintiffs applied to Judge Bobbitt for an interlocutory or preliminary injunction staying the proposed conveyance until the trial of the suit on its merits. After hearing the evidence presented to him by the parties, Judge Bobbitt found facts conforming to those stated in the seven numbered paragraphs set out above; concluded as matters of law upon such findings that the statutory provisions invoked by the plaintiffs do not deny to the defendants the legal power to select and use the 30 acres as the site for the West Buncombe Consolidated High School, and that the school authorities have not abused their discretion in selecting the 30 acres as the site for the West Buncombe Consolidated High School; and entered

an order refusing to grant the interlocutory or preliminary injunction sought by the plaintiffs. The plaintiffs excepted and appealed. They assert by their assignments of error that the facts found by the judge are contrary to the evidence; and that the conclusions of the judge and his resultant denial of the interlocutory or preliminary injunction are contrary to law.

*Tom S. Garrison, Jr., and J. W. Haynes for plaintiffs, appellants.*

*Zebulon Weaver, Jr., Roy A. Taylor, and Don C. Young for defendants, appellees.*

*Attorney-General McMullan and Assistant Attorney-General Love for the State Board of Education, Amicus Curiae.*

ERVIN, J. Since some of the assignments of error challenge the correctness of the findings of fact of the judge, we have reviewed these findings in conformity with the rule which obtains in such case on an appeal from an order granting or refusing an interlocutory or preliminary injunction. McIntosh: North Carolina Practice and Procedure in Civil Cases, section 876. The review convinces us that the evidence presented to the judge in the court below both justifies and requires his findings of fact. As a consequence, we disallow the exceptions to the findings of fact, and take up the assignments of error which question the validity of the conclusions of law and the resultant order refusing the temporary injunction sought by the plaintiffs.

When all is said, it is obvious that the real purpose of the instant suit is to prevent the school authorities from effectuating their selection of the 30 acres as the site for the proposed West Buncombe Consolidated High School.

These propositions are well settled:

1. The Superior Court may enjoin the action of school authorities in selecting a site for a new school, or in changing the location of an existing school, when their action is without authority of law. *Kistler v. Board of Education,* 233 N.C. 400, 64 S.E. 2d 403; *Atkins v. McAden,* 229 N.C. 752, 51 S.E. 2d 484; *Davenport v. Board of Education,* 183 N.C. 570, 112 S.E. 246.

2. Although the law may confer upon school authorities the discretionary power to select a site for a new school, or to change the location of an existing school, the Superior Court may enjoin the selection of a site for a new school or the change of location of an existing school by such authorities when their action is so clearly unreasonable as to amount to a manifest abuse of their discretion. *Kistler v. Board of Education, supra; Feezor v. Siceloff,* 232 N.C. 563, 61 S.E. 2d 714; *Board of Education v. Lewis,* 231 N.C. 661, 58 S.E. 2d 725; *Atkins v. McAden, supra; Messer*

*v. Smathers,* 213 N.C. 183, 195 S.E. 376; *McInnish v. Board of Education,* 187 N.C. 494, 122 S.E. 182.

The statute now codified as G.S. 115-85 undoubtedly confers upon school authorities the general discretionary power to select sites for new schools and to change the locations of existing schools. *Feezor v. Siceloff, supra; Board of Education v. Lewis, supra; Atkins v. McAden, supra; Moore v. Board of Education,* 212 N.C. 499, 193 S.E. 732. The plaintiffs assert, however, that this general discretionary power is subject to certain limitations embodied in G.S. 115-61 and subdivision 9 of G.S. 153-9, which preclude the selection and use of the 30 acres as the site for the proposed West Buncombe Consolidated High School.

G.S. 115-61 is phrased as follows: "Since the cost of good high school instruction is too great to permit the location of small high schools close together, it shall be the duty of the county board, wherever the needs demand it, to locate not more than one standard high school in each township or its equivalent: Provided, it shall be discretionary with county boards of education to continue standard high schools in existence in 1923 contrary to the provisions of this section, and to establish such high schools in townships in which city schools are already located."

The plaintiffs lay hold on the fact that the plan of organization contemplates the continued operation of the standard high school constituting a part of the union school in the portion of Leicester Township lying within the bounds of the Leicester School District, and argue that the selection and utilization of the 30 acres as the site for the West Buncombe Consolidated High School will place "two . . . high schools in Leicester Township . . . in violation of . . . G.S. 115-61."

We will assume without so adjudging for the purpose of this particular controversy that G.S. 115-61 forbids the county board of education "to locate . . . more than one standard high school in each *township* or *its equivalent.*" This question arises on this assumption: What is the equivalent of a township? The term "township" was brought into North Carolina law by Sections 3, 4, 5 and 6 of Article VII of the Constitution of 1868. A "township" is a territorial and political subdivision of a county, and is established for the convenient exercise of some of the elementary functions of government. *Powers v. Thorn,* 155 Kan. 758, 129 P. 2d 254; *State v. Bone Creek Tp., Butler County,* 109 Neb. 202, 190 N.W. 586. A school district is the equivalent of a township because it is a "convenient territorial division or subdivision of a county, created for the purpose of maintaining within its boundaries one or more public schools." G.S. 115-9. Since the West Buncombe School District is the equivalent of a township and the West Buncombe Consolidated High School will be the only standard high school located within its boundaries, G.S. 115-61 does not limit in any degree the discretionary power of the

school authorities to select and use the 30 acres as the site for the West Buncombe Consolidated High School.

Subdivision 9 of G.S. 153-9 grants to the board of commissioners of each county the power "to remove or designate a new site for any county building" subject to these limiting conditions: "But the site of any county building already located shall not be changed, unless by a unanimous vote of all the members of the board at any regular monthly meeting, and unless upon notice of the proposed change, specifying the new site. Such notice shall be published in a newspaper printed in the county, if there is one, and posted in one or more public places in every township in the county for three months, next immediately preceding the monthly meeting at which the final vote on the proposed change is to be taken. Such new site shall not be more than one mile distant from the old, except upon the special approval of the General Assembly.".

The plaintiffs insist that the limiting conditions specified in this statute preclude the present selection and use of the 30 acres as a site for the new consolidated high school. They advance these arguments to support this position: That the county home for the aged and infirm is a county building within the purview of the statute; that the statute inhibits any change in the use of any part of the site of the county home until the limiting conditions, *i.e.*, the three months' publication of notice of the proposed change and the ensuing vote of the board of county commissioners approving the change, have taken place; that the 30 acres constitute a part of the site of the county home, and cannot be devoted to any other use at this time because the limiting conditions applicable to them have not occurred; and that as a consequence of these things the board of county commissioners has no present legal power to convey the 30 acres to the county board of education for use as a site for the new consolidated high school.

The position of the plaintiffs is unsound even if the statutory provision embodied in subdivision 9 of G.S. 153-9 be construed to cover county homes for the aged and infirm as well as county courthouses and county jails, the only county buildings in use in 1868, when the statutory provision was originally enacted. The plaintiffs have misinterpreted the statute. The limiting conditions incorporated in it are concerned with changes in the locations of the sites of county buildings, and not with changes in the uses of parts of the sites of county buildings. It necessarily follows that the statute has no application whatever to the proposed conveyance of the 30 acres. The legal standing of the plaintiffs would not be bettered a whit, however, if the construction which they put upon the statute were the correct one. The site of a county building embraces only the space occupied by the building and such adjacent land as is reasonably required for the convenient use of the building. *Board of*

*Education v. Forrest,* 190 N.C. 753, 130 S.E. 621; *State v. Jersey City,*
36 N.J.L. 166. Under this definition and the evidence, it is obvious that
the 30 acres do not constitute a part of the site of the county home.

The evidence and the findings of fact are in harmony with the conclu-
sion that the school authorities did not abuse the discretion reposed in
them by law in choosing the 30 acres as the site for the West Buncombe
Consolidated High School. The circumstance that the approach to it
may be "over a narrow bridge . . . and a crooked highway" neither com-
pels nor supports the contrary conclusion. In the very nature of things,
ways of travel are ofttimes imperfect in a region justly famed for the
rugged grandeur of its mountains. The additional circumstance that
there are satisfactory sites for the new schoolhouse at other places does
not disprove the soundness of the decision on the present phase of the liti-
gation. Indeed, it illustrates the necessity for the legislation vesting in
the school authorities the discretionary power to determine which one of
the various available sites is to be used.

The order refusing the interlocutory or preliminary injunction is
Affirmed.

PARKER, J., took no part in the consideration or decision of this case.