DOUGLAS AIRCRAFT COMPANY, INC., A CORPORATION v. LOCAL UNION 379 OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS (A. F. OF L.) AND FLOYD HENDERSON, BUSINESS AGENT OF LOCAL UNION 379 OF I. B. E. W. (A. F. OF L.); AND INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL WORKERS, LOCAL UNION No. 413 (A. F. OF L.) AND J. E. McELDUFF, BUSINESS AGENT OF INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS, LOCAL UNION No. 413 (A. F. OF L.).

(Filed 31 January, 1958.)

1. **Master and Servant § 2e—**

Employees or those seeking employment have the right in this State to picket in an orderly and peaceful manner the employer's place of business to secure the execution or performance of a contract not prohibited by law.

2. **Same—**

Orderly and peaceful picketing in an industry affecting interstate commerce to enforce the right to collective bargaining is guaranteed by Federal statute. 29 USCA 157.

3. **Appeal and Error § 50—**

In injunction proceedings, the findings of fact made by the trial judge are not conclusive, but such findings are nevertheless presumed correct and will be so treated in the absence of a showing to the contrary.

4. **Master and Servant § 2e—**

A firm awarded a contract by the Federal Government upon its low bid is not an employee of the United States, but is an independent contractor, and in the performance of the contract the United States is not an "employer" so as to render the Labor Management Relations Act inapplicable. 29 USCA 152(2).

5. **Same—**

G.S. 95, art. 10, is valid and does not impair any constitutional rights of employees, and therefore picketing for the purpose of forcing an employer to employ only union labor is for an unlawful purpose in this State. G.S. 95-79.

6. **Same: Injunctions § 4g—**

The power of courts of equity to enjoin picketing is not limited to preventing violence or a breach of the peace, but extends also to those instances where the picketing is to accomplish an unlawful or forbidden purpose, and an order which prohibits picketing intended to consummate a criminal act impairs no constitutional right.

7. **Injunctions § 4g—**

Injunction will lie to inhibit a criminal act when the act invades civil and property rights and no other adequate remedy is available, notwithstanding that the commission of the act would subject the perpetrator to criminal prosecution or make him liable for damages in an action in tort.

**8. Constitutional Law § 1—**

Although the United States and the individual states each have areas in which they may exercise supreme legislative authority, Congress may permit state action in any area in which the Federal authority is supreme.

**9. Constitutional Law § 27: Master and Servant § 2e—**

Problems growing out of labor-management relations which affect interstate commerce are governed by Federal law, and a state court may not issue an order at variance with Federal legislation as interpreted by the Supreme Court of the United States.

**10. Master and Servant § 2e—**

In an industry affecting interstate commerce within the purview of the Labor Management Relations Act, picketing by a labor union not certified as a representative of the employees of such concern for the purpose of forcing the employer to recognize or bargain with the union, is an unfair labor practice. 29 USCA 158(b).

**11. Courts § 18—**

The National Labor Relations Board is empowered to prevent any person from engaging in any unfair labor practice affecting commerce which is prohibited by the Federal Labor Management Relations Act, and no authority is given any state board or court in regard thereto, nor does the failure of the Board to act invest the courts with power to act in the premises.

**12. Same—**

Congress has expressly permitted action by the States, in the exercise of their discretion, to outlaw union or closed shop agreements in industries affecting commerce which are not governed by the Railway Labor Act.

**13. Same—**

The National Labor Relations Board has no authority to enforce the laws of this State, even though such laws are enacted pursuant to congressional authority and relate to matters over which Congress could exercise control.

**14. Same: Master and Servant § 2e—**

Where orderly and peaceful picketing is for the unlawful purpose of forcing an employer to breach our right to work law, G.S. 95-79, and also constitutes an unfair labor practice within the purview of the Federal Labor Management Relations Act, our State courts have no authority to issue a restraining order enjoining such picketing, since under the Federal decisions the Federal law exclusively pre-empts the field and removes the matter from the jurisdiction of the State courts.

APPEAL by defendants from *Moore (Dan K.), J.,* 19 July 1957 at Chambers, MECKLENBURG.

On application of plaintiff, a temporary restraining order issued by Judge Huskins enjoining defendants from picketing or interfering with plaintiff or its subcontractors. On the return day Judge Moore heard the evidence offered, made findings

of fact, and thereupon continued the restraining order until the final hearing on the issues raised by the pleadings.

As a basis for the restraining order the complaint alleged: Plaintiff, a Delaware corporation, has a place of business at Charlotte where it is engaged in manufacturing guided missiles under a contract with the United States. Defendants are unincorporated labor organizations and authorized representatives thereof. Plaintiff's plant is located on a tract containing 78 acres which is completely surrounded by a chain-link fence. Many of the processes used by plaintiff and its subcontractors and the manufactured products produced by plaintiff are classified by the Government as secret and are vital to the security of the United States. Plaintiff is responsible for safeguarding this information and the missiles and parts thereof produced on its Charlotte property. To provide the required secrecy plaintiff controls all entrances and exits to its grounds and supervises the movement of personnel within the area. On said tract are buildings occupied by other contractors performing work for the Government incidental to plaintiff's work, but plaintiff has exclusive responsibility for and control of all entrances to and exits from the grounds for security purposes. The Corps of Engineers of the Army entered into a contract with Boyd & Goforth, Inc., a construction firm, for the erection of buildings on the 78-acre tract. This contract is intended to facilitate the construction of guided missiles. No dispute exists between Boyd & Goforth and its employees. Defendants established a picket line at all the gates and entrances to the land occupied by plaintiff and its subcontractors. The picket lines carry signs or banners inscribed "UNFAIR TO BUILDING TRADES" without identifying the person or corporation so accused. There is no labor dispute between plaintiff or its subcontractors and their employees, and said picketing is not predicated on any controversy between them; but the picketing is the result of a conspiracy intended to compel plaintiff to deny admittance to the grounds by non-union employees of Boyd & Goforth, thereby requiring Boyd & Goforth, as a condition to the performance of its contract with the Government, to confine its employment to members of defendant unions in violation of G.S. 95-78 *et seq.* As planned and anticipated by defendants, many of plaintiff's employees and many employees of its subcontractors have refused to cross the picket line established by defendants, and plaintiff has been hampered in the performance of its contract to supply the United States with guided missiles. Defendants had no legal right to picket plaintiff's property when no controversy existed between it and its employees. Defendant Henderson acknowledged this fact but stated that he proposed to cause as much

trouble as possible to force Boyd & Goforth to employ union labor.

Defendants filed an answer admitting the relationship of the parties and plaintiff's contract with the United States. They denied the allegations as to the cause for picketing. They allege that defendant unions had contracts with plaintiff for the performance of certain phases of the work done by plaintiff. They aver controversies arose between plaintiff and defendant unions with respect to these contracts, and the picketing was to force compliance by plaintiff with the provisions of the contracts between plaintiff and defendant unions. They further allege that Boyd & Goforth were discriminating against defendant unions in that it hired and employed nonunion members "for the sole reason that they were non-union, and did wrongfully and unlawfully encourage and influence the said employees not to join with defendant unions . . ." Defendants allege the picketing was peaceful, plaintiff was engaged in interstate commerce, and the National Labor Relations Board had exclusive jurisdiction of the controversy.

At the time fixed for the return of the temporary order, defendants moved to dismiss for that the court was without jurisdiction. This motion, treated as a demurrer, was overruled. Thereupon the court heard evidence both *parol* and by affidavit.

The court, on the evidence offered and the stipulations of the parties, found: (1) Plaintiff is an industry or business engaged in commerce within the meaning of that term as used in the Labor Management Relations Act of 1947. (29 U.S.C.A. 141 *et seq.*) ; (2) the facts stated in the complaint are true; (3) there has been no mass picketing, and the picketing has been peaceful. It was on these findings that the court continued the restraining order to the final hearing. Defendants excepted to the order and appealed.

*Bell, Bradley, Gebhardt & DeLaney for plaintiff appellee.*
*William H. Booe for defendant appellants.*

RODMAN, J. Defendants state the question presented by the appeal thus: "Does the Labor Management Relations Act place exclusive primary jurisdiction in the National Labor Relations Board and the Federal Courts of a suit by an employer, engaged in an activity affecting commerce within the contemplation of said act, for an injunction against peaceful picketing when the facts reasonably bring the controversy either within the section of the Act prohibiting such conduct or within the protective section of that Act?"

Defendants argue that the courts of North Carolina are without jurisdiction to proceed in this action for either of two reasons: (1) Defendants' conduct is unlawful and unfair, and because of its unfairness the courts of North Carolina are without authority to suppress such conduct; (2) defendants' conduct is lawful and the courts ought not to enjoin defendants from pursuing their legal rights.

It seems preferable first to consider and determine the validity of the second reason assigned. That reason, based on good morals, is sound in law. If it is also supported by the facts, there will be no necessity of determining whether the courts are deprived of authority to prevent conduct which the Legislature, in the exercise of its power, has declared unlawful, and Congress has said is unfair.

North Carolina has consistently recognized the rights of employees or those seeking employment to orderly and peacefully picket an employer's place of business to secure the execution or performance of a contract not prohibited by law. *S. v. Van Pelt,* 136 N.C. 633; *Citizens Co. v. Typographical. Union,* 187 N.C. 42, 121 S.E. 31; *Hudson v. R. R.,* 242 N.C. 650, 89 S.E. 2d 441.

Such picketing to enforce the right to collective bargaining is, as to employees in an industry affecting interstate commerce, guaranteed by congressional statute, 29 U.S.C.A. 157.

Defendants' answer asserts the picketing was orderly, peaceful, and for a lawful purpose, *i.e.,* to compel compliance by plaintiff with the provisions of a lawful contract between the parties. The court heard the evidence offered, both *parol* and by affidavit. It found that the picketing was peaceful, but rejected the assertion that it was for a lawful purpose. To the contrary, the court found that the picketing was intended to force plaintiff to commit a forbidden act.

While the findings of fact made by the judge who heard the case are not conclusive; nevertheless, the presumption is that the findings so made are correct. *Huskins v. Hospital,* 238 N.C. 357, 78 S.E. 2d 116; *Clinard v. Lambeth,* 234 N.C. 410, 67 S.E. 2d 452; *Branch v. Board of Education,* 230 N.C. 505, 53 S.E. 2d 455; *Brown v. Candler,* 236 N.C. 576, 73 S.E. 2d 550; *Fremont v. Baker,* 236 N.C. 253, 72 S.E. 2d 666; *Banner v. Button Corporation,* 209 N.C. 697, 184 S.E. 508. Our review of the evidence does not disclose anything which leads us to conclude that the findings made by Judge Moore are in any manner incorrect. Hence, it follows that defendants are not justified in seeking to have the restraining order dismissed because their conduct was a mere exercise of a legal right.

We are, therefore, required to evaluate the other reason urged for dismissal, viz.: Defendants are entitled to have the

order vacated because their conduct, a violation of the criminal laws of North Carolina, was also an unfair labor practice as declared by the Congress of the United States.

An examination of applicable statutes and the interpretation of these statutes by the court charged with the responsibility of making the interpretation is necessary to find an answer to the question defendants propound.

Public policy has for many years required governmental needs to be supplied pursuant to contracts with low bidders ascertained by public advertisement. 10 U.S.C.A. Ch. 137, as re-enacted 10 August 1956. North Carolina has for many years so provided. G.S. 143-129. Neither plaintiff nor Boyd & Goforth are employees of the government. They are independent contractors entitled to exercise their judgment as to the manner of performing their contracts. Hence we find no support for the assertion by plaintiff that the exclusion of the United States in the definition of "employer" in the Labor Management Relations Act of 1947 (29 U.S.C.A. 152(2) ) makes that Act inapplicable to this case. True the United States is affected by the strike, but that is a mere incident. The strike, on the evidence, is intended to force plaintiff and Boyd & Goforth, who are employers, to submit to the demands of defendants.

Prior to 1947 orderly and peaceful picketing to induce an employer to limit employment to union members violated no law of the State of North Carolina. It was but the exercise of a legal right. Public policy did not condemn a contract so obtained. *S. v. Van Pelt, supra; Hudson v. R. R., supra.*

By Ch. 328, S.L. 1947, now Art. 10, Ch. 95, General Statutes, ratified 18 March 1947, the Legislature in emphatic language declared its public policy with respect to conditions incident to the right to employment. Sec. 2 of the Act (G.S. 95-79) provides :

"Any agreement or combination between any employer and any labor union or labor organization whereby persons not members of such union or organization shall be denied the right to work for said employer, or whereby such membership is made a condition of employment or continuation of employment by such employer, or whereby any such union or organization acquires an employment monopoly in any enterprise, is hereby declared to be against public policy and an illegal combination or conspiracy in restraint of trade or commerce in the State of North Carolina."

The Act was promptly attacked as unconstitutional. This Court, by opinion filed 19 December 1947, held the Act a valid exercise of legislative authority. *S. v. Whitaker,* 228 N.C. 352, 45 S.E. 2d 860. In a companion case decided the same day it was

declared that a violation of this statute was a crime punishable as a misdemeanor. *S. v. Bishop,* 228 N.C. 371, 45 S.E. 2d 858.

The decision of this Court in the Whitaker case was appealed to the Supreme Court of the United States. It was there argued and considered with a similar case from Nebraska. The Supreme Court of the United States held that the Legislature of North Carolina did not, by the enactment of the questioned statute, impair any constitutional right and affirmed the judgment of this Court. *Lincoln Fed. L. U. v. Northwestern I. & M.,* 335 U.S. 525, 93 L.Ed. 212.

As pointed out above, orderly and peaceful picketing to obtain a lawful result is but the exercise of constitutional rights and cannot be prohibited; but when picketing, for a lawful purpose, is such as to disturb the public peace, it can and has repeatedly been enjoined or otherwise punished. *Wood Turning Co. v. Wiggins,* 247 N.C. 115; *Citizens Co. v. Typographical Union, supra; S. v. Dalton,* 168 N.C. 204, 85 S.E. 693; *Youngdahl v. Rainfair,* decided 9 December 1957, 355 U.S. ..........., 2 L.Ed. 2d 151; 78 S.Ct. ....; *United A. A. & A. I. W. v. Wisconsin Emp. Rel. Bd.,* 351 U.S. 266, 100 L.Ed. 1162, 76 S.Ct. 794; *Allen-Bradley Local v. Wisconsin E. Rel Bd.,* 315 U.S. 740, 86 L.Ed. 1154.

But the power of a court of equity to enjoin is not exhausted merely because violence is not present. If the threat to destroy one's business by the picketing is to accomplish an unlawful and forbidden purpose, courts may enjoin unless forbidden by some controlling statute. *Construction Co. v. Electrical Workers Union,* 246 N.C. 481, is an affirmance of that power as related to the statute here under consideration.

Devin, J., (later C. J.), speaking in *Transit Co. v. Coach Co.,* 228 N.C. 768, 47 S.E. 2d 297, said: "Wrongful acts, which may also be criminal, but which threaten injury to private property rights may invoke the aid of equity to prevent irreparable loss. The power of the courts to enjoin wrongful and injurious acts is not divested because such acts may also be in violation of the criminal law. 'Injunction will issue to inhibit a criminal act when the act invades civil or property rights and where there is no other adequate remedy available.' 43 C.J.S. 762; 28 A.J. 339. Particularly is this so where a public service is involved."

It is, we think, now authoritatively settled that an order which prohibits picketing intended to consummate a criminal act impairs no constitutional right. *International Brotherhood v. Vogt,* 354 U.S. 284 1 L. Ed. 2d 1347, 77 S.Ct. 1166.

The United States and the individual states each have areas in which they may exercise supreme legislative authority. Congress may, however, permit state action in any area in which its authority is supreme.

The problems growing out of labor-management relations which affect interstate commerce are unquestionably in the field in which Congress has supreme authority. If the order issued in this case runs counter to congressional legislation as interpreted by the Supreme Court of the United States it was, of course, improvidently issued.

As noted, North Carolina's statute, G.S. 95, Art. 10, was enacted on 18 March 1947. On 23 June 1947 important amendments to then existing Federal labor statutes became effective. Asserted to be important to the decision in this case are two provisions which were new to Federal labor policies. One amendment deals with unfair labor practices by labor organizations. The statute, 29 USCA 158, as amended, provides: "(b) It shall be an unfair labor practice for a labor organization or its agents — . . . (4) to engage in, or to induce or encourage the employees of any employer to engage in . . . concerted refusal in the course of their employment . . . to perform any services, where an object thereof is: . . . (B) forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title."

The other amendment here important gave the states the right to prohibit union or closed shops even in those industries which affected commerce. 29 USCA 164(b) : "Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law."

On the facts found or admitted the defendants engaged in an unfair labor practice. The National Labor Relations Board is, by 29 USCA 160(a), empowered "to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce." No authority is given a state board or state court to "prevent any person from engaging in any unfair labor practice." The mere fact that the body authorized by Congress to prevent unfair labor practices declines to exercise its jurisdiction does not invest the courts with the power to act. That has been authoritatively settled by the recent decisions of the Supreme Court of the United States. *Guss v. Utah L.R.B.*, 353 U.S. 1, 1 L.Ed. 2d 601, 77 S.Ct. 598; *Amalgamated Meat Cutters v. Fairlawn Meats*, 353 U.S. 20, 1 L.Ed. 2d 613, 77 S.Ct. 604; *San Diego Bldg. Trades Council v. Garmon*, 1 L.Ed. 2d 618. These cases do not, however, seem to be conclusive of the problem presented to us. Mr. Chief Justice War-

ren, in the Guss case, said: "Since it was first enacted in 1935, the National Labor Relations Act has empowered the National Labor Relations Board 'to prevent any person from engaging in any unfair labor practice . . . affecting commerce.' By this language and by the definition of affecting commerce elsewhere in the Act Congress meant to reach to the full extent of its power under the commerce clause."

But Congress has definitely and specifically said that the States might, in the exercise of their discretion, outlaw union or closed shop agreements in industries affecting commerce. Did Congress intend to deny to a State the power to enforce a law which it permitted that State to enact? It is suggested that the State may effectively enforce its valid law by criminal process and the individual damaged by the wrongful conduct may have his remedy by an action in tort. See *United Constr. W. v. Laburnam Constr. Corp.,* 347 U.S. 656, 98 L.Ed. 1025, 74 S.Ct. 833; *San Diego Building Trades v. Garmon, supra* (at p. 620).

Congress, in its discretion, has drawn a distinction between differing instrumentalities affecting commerce. Employees of rail carriers may insist on the union shop, notwithstanding a State statute to the contrary. The paramount Federal statute so provides. 45 USCA 152. The distinction between employees of railways and employees in other businesses affecting commerce where the question of union shop was involved was noted in *Hudson v. R.R., supra.* It was there held that the union shop contract was, because of the Federal statute, permissible and valid. Writing on the same question, Mr. Justice Douglas, in *Railway Employes' Dept. A. F. L. v. Hanson,* 351 U.S. 225, 100 L.Ed. 1112, said: "The union shop provision of the Railway Labor Act is only permissive. Congress has not compelled nor required carriers and employees to enter into union shop agreements. The Supreme Court of Nebraska nevertheless took the view that justiciable questions under the First and Fifth Amendments were presented since Congress, by the union shop provision of the Railway Labor Act, sought to strike down inconsistent laws in 17 States. (citing cases) The Supreme Court of Nebraska said, 'Such action on the part of Congress is a necessary part of every union shop contract entered into on the railroads as far as these 17 States are concerned for without it such contracts could not be enforced therein.' . . . We agree with that view." Thus it appears that except for the amendment to the Railway Labor Act of 1951, any State could prohibit conduct such as defendants engaged in. *Algoma P. & V. Co. v. Wisconsin Emp. Rel. Bd.,* 336 U.S. 301, 93 L.Ed. 691.

The National Labor Relations Board has no authority to enforce the laws of North Carolina even though the laws are

enacted pursuant to congressional authority and relate to matters over which Congress could exercise control. Its authority is limited to enforcement of Federal laws. It seems patent to us that Congress did not intend to authorize a State to enact a statute and at the same moment prohibit it from enforcing the statute.

Restraining orders are not the only remedies available to compel obedience to a valid statute. Criminal process and tort actions for damages are also constantly used for this purpose.

A Pennsylvania statute declares: "It shall be an unfair labor practice for an employer— . . . By discrimination in regard to hire or tenure of employment, or any term or condition of employment to encourage or discourage membership in any labor organization." That is also the language of the Federal statute, 29 USCA 158(3). The Pennsylvania statute likewise parallels the provisions of subsection (b) (2) of section 158 of the Federal statute. The Teamsters, Chauffeurs and Helpers A. F. L. picketed Garner to force him, as an employer, to violate the Pennsylvania statute. A lower court in Pennsylvania enjoined the picketing, which was peaceful. The Supreme Court of Pennsylvania reversed on the grounds that the field had been pre-empted by Congress. *Garner v. Teamsters, Chauffeurs and Helpers, Etc.,* 94 A. 2d 893. The Supreme Court of the United States affirmed the decision, 346 U.S. 485, 98 L.Ed. 228, 74 S.Ct. 161. It will be noted that the statute there dealt with was not one expressly authorized by Congress but dealt with the same subject and in the identical language used by Congress. Mr. Justice Jackson, in affirming, said: "But when two separate remedies are brought to bear on the same activity, a conflict is imminent. It must be remembered that petitioners' state remedy was a suit for an injunction prohibiting the picketing. The federal Board, if it should find a violation of the national Labor Management Relations Act, would issue a cease-and-desist order and perhaps obtain a temporary injunction to preserve the *status quo.* Or if it found no violation, it would dismiss the complaint, thereby sanctioning the picketing. To avoid facing a conflict between the state and federal remedies, we would have to assume either that both authorities will always agree as to whether the picketing should continue, or that the State's temporary injunction will be dissolved as soon as the federal Board acts. But experience gives no assurance of either alternative, and there is no indication that the statute left it open for such conflicts to arise. . . . Of course, Congress, in enacting such legislation as we have here, can save alternative or supplemental state remedies by express terms, or by some clear implication, if it sees fit."

The Garner decision was followed in the spring of 1955 by *Weber v. Anheuser-Busch, Inc.,* 348 U.S. 468, 99 L.Ed. 546, 75 S.Ct. 480. The Supreme Court reversed the Missouri Courts which had issued a restraining order enjoining picketing in violation of section 158 (b) (4) (D) and in violation of Missouri's restraint-of-trade statute. See also *J. J. Newberry Co. v. Retail Clerks International Ass'n.,* 298 P. 2d 375, reversed, 352 U.S. 987, 1 L.Ed. 2d 367, 77 S.Ct. 386.

Neither the Garner case nor the Weber case dealt specifically with an act declared by Congress to be an unfair labor practice, and by a State law authorized by Congress, also defined as unlawful.

The question of the right of a State to enjoin conduct violative of State law authorized by Congress was directly presented to the Supreme Court of Tennessee in the case of *Farnsworth & Chambers Co. v. Local Union 429, Etc.,* 299 S.W. 2d 8. The decision was announced 8 February 1957. Justice Prewitt stated the question for determination thus: "The demurrers filed to the original and supplemental bill raises one issue, that is, whether the Courts of Tennessee have the power to enforce the right to work law, T.C.A. Sec. 50-208, or whether it was the intention of Congress in the enactment of the Labor Management Act, Taft-Hartley Law, 29 U.S.C.A. Sec. 141 *et seq.,* to so exclusively pre-empt the field of Labor Management Relations in interstate commerce as to remove the matter from the jurisdiction of the State Courts." After reviewing various decisions of the Supreme Court of the United States, including *Weber v. Anheuser-Busch, Inc., supra,* the Tennessee Court reached the conclusion that power remained in State courts to enforce its so-called right to work statute.

On 27 May 1957 the Supreme Court of the United States reversed the Supreme Court of Tennessee. It merely said: "The petition for writ of *certiorari* is granted and the judgment of the Supreme Court of Tennessee is reversed. *Weber v. Anheuser-Busch, Inc.,* 348 U.S. 468, 99 L.Ed. 546, 75 S.Ct. 480; *Garner v. Teamsters, etc. Union,* 346 U.S. 485, 98 L.Ed. 228, 74 S.Ct. 161."

We can draw no distinction between the facts in the Farnsworth case and the facts found by Judge Moore. The Court having final authority to ascertain congressional intent has declared the law. Upon that declaration of the law, the Superior Court was without authority to issue the restraining order. The judgment appealed from is

Reversed.