Brenden J. Long Topeka City Attorney City Hall, 215 S.E. 7th Street Room 353 Topeka, Kansas 66603
Dear Mr. Long:
You inquire regarding 2005 House Bill No. 2083 (H.B. 2083), which addresses the consolidation of governmental and administrative functions in the City of Topeka and Shawnee County. Specifically, you request our opinion regarding whether H.B. 2083 violates Article 12, Section 5 of the Kansas Constitution (the Home Rule Amendment) and whether townships in Shawnee County will continue to exist should consolidation occur.
H.B. 2083 creates the Consolidation Commission of Topeka, Kansas and Shawnee County. The purpose of the Consolidation Commission is to "prepare and adopt a plan addressing the consolidation of the city and county or certain city and county offices, functions, services and operations."[1] A preliminary plan has been adopted[2] and a final plan will be adopted by the Commission within 30 days of the last public hearing.[3] The final plan will then be submitted to the electors who reside within and without the corporate limits of the City of Topeka. If a majority of each vote in favor, the consolidation plan shall be implemented.[4]
Section 4 of H.B. 2083 itemizes what a consolidation plan should address in terms of consolidating city and county offices, functions, services, and operations.[5] If consolidation occurs, the consolidated government is subject to Section 6, which is the focus of this opinion. Section 6 provides, in part:
 "(g) Upon the effective date of the consolidation of the city and county, the territory of the consolidated city-county shall include:
 "(1) All territory of the county for purposes of exercising the powers, duties and functions of a county.
 "(2) All of the territory of the county, except for the territory of the cities of Auburn, Rossville, Silver Lake or Willard and the unincorporated area of the county, for purposes of exercising the powers, duties and functions of a city.
. . . .
 "(k) [T]he consolidated city-county shall be a county. The governing body of the consolidated city-county shall be considered county commissioners for the purposes of section 2 of article 4 of the constitution of the state of Kansas and shall have all the powers, functions and duties of a county and may exercise home rule powers in the manner and subject to the limitations provided by K.S.A. 19-101a, and amendments thereto, and other laws of this state. . . .
 "(l) The consolidated city-county shall be a city of the first class. The governing body of the consolidated city-county shall have all the powers, functions and duties of a city of the first class and may exercise home rule powers in the manner and subject to the limitations provided by article 12, section 5 of the constitution of the state of Kansas and other laws of this state."[6]
Your first query regarding whether H.B. 2083 violates the Home Rule Amendment to the Kansas Constitution,[7] is based upon a memorandum from the League of Kansas Municipalities to the Consolidation Commission positing that because Section 6(l) makes the consolidated city/county a city of the first class, the Legislature cannot restrict the exercise of home rule power by excluding the 494 square miles of unincorporated area of the county as arguably required by Section 6(g)(2). Home rule power, according to the League, prohibits the Legislature from restricting to certain areas a governing body's authority.[8]
We disagree with the League's conclusion that H.B. 2083 runs afoul of the Home Rule Amendment because the League's position rests upon the erroneous premise that H.B. 2083 combines two territories into one. This premise is based upon the consolidation of Kansas City, Kansas and Wyandotte County which occurred in 1996. The Kansas City/Wyandotte County consolidation statutes[9] served as the template for H.B. 2083. Section 6 of H.B. 2083 is almost identical to K.S.A. 12-345(h)(j)(l) and (m). Unfortunately, the Kansas City/Wyandotte County legislation was crafted to fit a situation that differs significantly from Topeka/Shawnee County. As a result, the denomination of the consolidated city/county as a city of the first class in Section 6(l) is confusing — but does not make the bill unconstitutional.
In 1996, only 2.5 square miles of Wyandotte County was unincorporated.[10] Except for 37 people, every person in Wyandotte County lived in one of four incorporated cities: Bonner Springs, Edwardsville, Lake Quivera, and Kansas City.[11] Thus, while the statutes require the Unified Government of Wyandotte County/Kansas City, Kansas to wear different hats when exercising city or county power depending upon whether the power is exercised in the county or within the former boundaries of the City of Kansas City, the practical effect is that the territorial boundaries of the county and the city are almost identical.[12] Therefore, when the legislation describes the consolidated city/county as both a city of the first class and a county,[13] such description captures the reality of two territories with almost identical boundaries.
The situation is quite different in Topeka/Shawnee County. In Shawnee County, according to the League, the County's unincorporated area is 494 square miles out of a total of 552 square miles, with 40,000 people residing in the unincorporated areas. If consolidation occurs, the Topeka/Shawnee County Unified Government will wear different hats when exercising city or county power depending upon whether the power is exercised in the county or within the former boundaries of the City of Topeka. However, as the League points out, Section 6(g)(2) restricts the authority of the consolidated government to exercise its city power to the former boundaries of the City of Topeka which is 58 square miles. The League maintains that, by virtue of Section 6(l), city power must be extended to include the unincorporated area of Shawnee County. Failure to accord that power to the consolidated governing body, according to the League, violates the Home Rule Amendment.
That fact that H.B. 2083 could have been more artfully drafted does not make it unconstitutional.[14] We are also mindful that H.B. 2083 is presumed constitutional, and all doubts must be resolved in favor of its validity. A statute must clearly violate the constitution before it may be struck down. Should a court review H.B. 2083, it would have the duty to construe it in such a manner that it is constitutional.[15]
While the League bases its claim of unconstitutionality on Section 6(l), which states that "the consolidated city-county shall be a city of the first class," that phrase must be interpreted in light of the entire bill.[16] It is our opinion that H.B. 2083 appears to be a consolidation of governing bodies and administrative functions — not a consolidation of two territories into one.
The section addressing annexation is the most compelling evidence that H.B. 2083 does not create one territory. Section 7(b) of H.B. 2083 provides: "The governing body of a consolidated city-county may not initiate annexation procedures of land located within the county, but may annex land upon petition of the owners of any such land."[17] This section makes no sense if the newly consolidated territory is a city of the first class because there would be no land "within the county" to annex. Only if one interprets Section 6 to require a consolidated governing body to exercise city or county power depending upon whether the power is exercised in Shawnee County or within the former boundaries of the City of Topeka does Section 7(b) make sense. To give effect to Section 7(b), the consolidated governing body, when wearing its "city" hat, will be unable to annex land located within the unincorporated area of Shawnee County unless the landowners petition to do so.
Given the burden of overcoming the presumption of constitutionality that H.B. 2083 enjoys, it is our opinion a court would conclude that H.B. 2083 does not run afoul of the Home Rule Amendment.
You also inquire whether townships in Shawnee County would continue to exist under a consolidated governing body. Section 6(i) provides, as follows: "(i) Except for the consolidated city-county and unlessotherwise provided by law, other political subdivisions of the countyshall not be affected by consolidation of the city and county. Such otherpolitical subdivisions shall continue in existence and operation." A township is a political subdivision of the state and county.[18]
Section 6(i) is very clear that political subdivisions of the county, such as townships, shall continue to exist. Section 6(g)(2) reinforces this conclusion by removing from the consolidated governing body the ability to exercise the powers, duties and functions of a city in the unincorporated areas of the county that include townships.
In its memorandum to the Consolidation Commission, the League indicated that Section 6(j) states that other political subdivisions shall not be affected by the consolidation unless otherwise provided by law. The League maintains that the "law" in question is K.S.A. 80-1404, which, it maintains, would require the discontinuation of Shawnee County's twelve townships should consolidation occur.
K.S.A. 80-1404 provides, in part: "No city of the first or second class shall be included within the corporate limits of any township." The League's position, again, is founded on the faulty premise that H.B. 2083 creates one new territory that is a city of the first class. This city of the first class would — in effect — swallow all twelve townships and, pursuant to K.S.A. 80-1404, require their discontinuation. For the reasons previously mentioned in this opinion, we disagree with the League's conclusion.
The history of townships also does not support the League's position. Before Kansas became a state, the territorial legislature authorized counties to create townships.[19]
In 1868, K.S.A. 80-1404[20] was enacted which provided, in part: "Nocity of more than two thousand inhabitants shall be included within thecorporate limits of any township; but each of such cities shallconstitute a township for the purpose of electing justices of the peaceand constables . . . ."[21] K.S.A. 19-212 authorizes county commissioners to "set off, organize, and change the boundaries of townships." K.S.A. 80-1404 speaks to cities of the first class "within" townships — not townships "within" cities. K.S.A. 80-1404's purpose appears to preclude county commissions from creating townships containing cities of the first or second classes and to exclude from existing townships those cities that have changed their classification from third to second class because of increases in population.
We are also mindful that the Consolidation Commission itself believes that townships will continue to exist should consolidation occur. The Commission's preliminary plan provides as follows: "Governmentalentities in Shawnee County, other than county government and the city ofTopeka are not affected by consolidation. Townships, water districts,special service districts, and the third class cities of Auburn,Rossville, Silver Lake, and Willard will continue to exist and carry outthe same responsibilities they do now. . . ."[22] Should a court consider whether townships continue to exist under a Topeka/Shawnee County consolidation, it would accord some deference to the Consolidation Commission's interpretation of H.B. 2083.[23]
Finally, assuming conflict between Section 6 of H.B. 2083 and K.S.A.80-1404, (i.e. townships exist after consolidation vs. townships discontinued after consolidation), the rules of statutory construction provide that the more recent and more specific statute controls.[24]
Given the plain language of Section 6 of H.B. 2083, the interpretation by the Consolidation Commission, the rule of statutory construction that prefers the more recent and specific statute, and the history of townships, it is our opinion that K.S.A. 80-1404 would not result in the discontinuance of townships in Shawnee County should consolidation occur.
Sincerely,
 Phill Kline Attorney General
 Mary Feighny Assistant Attorney General
PK:JLM:MF:jm
[1] 2005 H.B. 2083, §§ 1(a), 3(a).
[2] www.cctksc.org
[3] 2005 H.B. 2083, § 3(d).
[4] 2005 H.B. 2083, § 3(e).
[5] 2005 H.B. 2083, § 4(b), (c).
[6] Emphasis added.
[7] Article 12, § 5.
[8] Memorandum from Don Moler Sandy Jacquot to the Consolidation Commission of Topeka, Kansas and Shawnee County dated June 14, 2005.
[9] K.S.A. 12-340 et seq.
[10] Minutes, House Committee on Local Government, January 25, 1996; League of Kansas Municipalities Memorandum to Consolidation Commission, June 14, 2005.
[11] Minutes, House Committee on Local Government, January 25, 1996.
[12] When considering which territory would be subject to the powers, duties and functions of a city, Chris McKenzie from the League of Kansas Municipalities persuaded the Senate Committee on Local Government to exclude the 2.5 square miles of unincorporated area in Wyandotte County.Minutes, Senate Committee on Local Government, January 18, 1996.
[13] K.S.A. 12-345(l)(m).
[14] State ex rel. Tomasic v. Unified Government of WyandotteCounty/Kansas City, Kansas, 265 Kan. 779, 798 (1998).
[15] Blue Cross and Blue Shield of Kansas, Inc. v. Praeger, 276 Kan. 232,254 (2003).
[16] Wirt v. Esrey, 233 Kan. 300 (1983) ("[i]n construing statutes, legislative intention is to be determined from general consideration of entire act; effect must be given, if possible, to entire act and every part thereof, and . . . it is duty of court . . . to reconcile different provisions so as to make them consistent, harmonious, and sensible").
[17] Emphasis added.
[18] Powers v. Thorn, 155 Kan. 758 (1942).
[19] James M. Drury, Township Government in Kansas, 1-2 (1954); K.S.A.19-212, Seventh.
[20] L. 1868, Ch. 110, § 48.
[21] K.S.A. 80-1404, last amended in 1968, deleted the reference to population size.
[22] Emphasis added. Preliminary Plan for Consolidating the Governments of Topeka, Kansas and Shawnee County, June 21, 2005, p. 7; Letter from Consolidation Commission Attorney, Deanne Watts Hay, to the Commission dated May 20, 2005. See www.cctksc.org
[23] Appeal of Harbour Bros., 256 Kan. 216 (1994) (interpretation of statute by administrative agency with the responsibility of enforcing statute is entitled to judicial deference especially when agency is one of special competence and expertise).
[24] State, ex rel. Tomasic v. Unified Government of WyandotteCounty/Kansas City, 264 Kan. 293, 311 (1998). See Letter from Consolidation Commission Attorney, Deanne Watts Hay, to the Commission dated May 20, 2005.